**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

BORIS ZAVADOVSKY and ELENA DVOINIK,
Plaintiffs,

v.                                    Civil Action No. 25-1008 (RC)

REPUBLIC OF AUSTRIA, et al.,
Defendants.

**PLAINTIFFS' OPPOSITION TO WESTFALL ACT CERTIFICATION AND MOTION TO STRIKE SUBSTITUTION AS TO DEFENDANTS LIUDMILA BATISTA AND MICHELLE CHARLES**

## I. INTRODUCTION

The United States Attorney has certified under the Westfall Act, 28 U.S.C. § 2679(d), that Defendants Liudmila Batista and Michelle Charles acted within the scope of their federal employment when they transmitted Austrian criminal subpoenas and investigation notices to Plaintiffs — U.S. citizens residing in Florida — at the request of unidentified Austrian individuals.

That certification is rebuttable. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). The record shows Batista and Charles acted outside the scope of their DOJ duties by:

1

1. Accepting informal, private approaches from Austrian Embassy in Washington D.C. rather than processing a lawful request from Austria's Central Authority;

2. Bypassing statutory and treaty procedures under 28 U.S.C. § 1782 and 18 U.S.C. § 3512, which require judicial oversight;

3. Skipping court review in the proper venue (Florida);

4. Using an incorrect Austrian reference number, inconsistent with Austrian Ministry of Justice records;

5. Sending both Plaintiffs' letters and criminal subpoenas in a single FedEx envelope; and

6. Employing a disconnected personal cell phone number belonging to Michelle Charles's mother as the "office" contact in official DOJ correspondence to a foreign government.

These irregularities and the underlying purpose — advancing Austria's prosecution in ongoing foreign proceedings directly adverse to Plaintiffs — demonstrate that Defendants acted without color of lawful authority and outside the scope of employment.

## II. LEGAL STANDARD

Under D.C. law, an employee acts within the scope of employment only if: (1) The conduct is of the kind the employee is employed to perform; (2) The conduct occurs substantially within authorized time and space limits; and (3) The conduct is actuated, at least in part, by a purpose to serve the employer. *Haddon v. United States*, 68 F.3d 1420, 1423–24 (D.C. Cir. 1995) (quoting Restatement (Second) of Agency § 228). Acts motivated solely by the interests of a third party fall outside the scope. *Majano v. United States*, 469 F.3d 138, 142 (D.C. Cir. 2006).

## III. FACTUAL BACKGROUND

1. In November 2022, unidentified Austrian Embassy affiliates privately contacted Batista (DOJ Criminal Division, OIA) to serve German-language criminal subpoenas from the Lower Austrian State Court (Wiener Neustadt) on Plaintiffs, who resided in Tampa, Florida.

2. The subpoenas ordered Plaintiffs to appear in Austria on January 13, 2023, and were accompanied by a notice of criminal investigation for alleged $988 insurance fraud and forgery of U.S. medical receipts.

3. The stated purpose was to compel Plaintiffs to travel to Austria to face charges.

4. Batista, a German speaker and former German legal fellow, agreed to assist these Austrian principals without a request from Austria's Central Authority.

5.  She did not seek a U.S. court order under § 1782 or § 3512, as required for lawful execution of foreign criminal requests.

6.  On November 9 and 10, 2022, Batista drafted and signed two letters (one per Plaintiff) but directed that both letters, both subpoenas, and the investigation notice be sent together in a single FedEx envelope.

7.  Outside the scope – Under Westfall case law (e.g., *Haddon*, *Majano*), adding language that Batista's letter contained intimidating language, omitted translations, and concealed the nature of the documents shows she was not following DOJ's authorized procedures for foreign service. That bolsters your argument she acted for foreign/third-party purposes, not within her employment scope.

8.  Due process & MLAT violations – The MLAT and § 1782 framework require clarity, translation of legal process, and an accurate description of what's being served. By noting that the subpoena and investigation notice were in foreign languages with no translation, and that Batista avoided specifying the nature of the documents while still admitting they came from a foreign court, you reinforce your point that proper judicial review would have blocked assistance.

9.  Batista listed the same "Austrian reference number" — 2022-0.781.156 — in both letters. Austrian Ministry of Justice records, however, show that the

official reference for only one Plaintiff Boris Zavadovsky, which was: 2022-0.855.542, with no record matching the number Batista used.

10. Batista did not identify which "Austrian authorities" made the request, and gave no contact information for them, but instructed Plaintiffs to "review these documents carefully for instructions and deadlines" and "contact the Austrian court or Austrian consulate" if they had questions.

11. Batista tasked Michelle Charles with mailing the envelope and reporting service to Austria.

12. On November 28, 2022, Charles emailed Austrian Ministry of Justice official Eva Höllersberger attaching FedEx proof of service. In her DOJ email signature, Charles listed a personal cell phone number belonging to her mother, not affiliated with DOJ (with whom she lived) as her "office" number, even though it had been disconnected since 2020.

13. Austrian officials later certified service in their courts, placed Plaintiffs on a wanted list, foreclosed their Austrian property, and Austrian-linked actors threatened and surveilled Plaintiffs in Florida, and continued to withhold the stolen personal property of the Plaintiffs unlawfully.

## IV. ARGUMENT

### A. Not "of the Kind" They Were Employed to Perform

OIA attorneys may execute foreign requests only under statutory authority —

typically § 3512 (MLAT) or § 1782 (non-treaty). Both require formal transmittal

through the U.S. Central Authority and often a court order from the district where

the target resides.

- *Intel Corp. v. AMD*, 542 U.S. 241, 246 (2004) — § 1782 authorizes judicial
  assistance and underscores court gatekeeping.
- *United Kingdom v. United States*, 238 F.3d 1312, 1317 (11th Cir. 2001) —
  MLAT requests must go between designated Central Authorities; no
  authority exists for direct informal execution.

Here, Defendants acted on an informal oral request from private Austrian contacts,

used an incorrect reference number, and transmitted both Plaintiffs' documents in

one envelope via private courier FedEx— none of which are authorized DOJ

functions. Defendants disclosed the Plaintiffs' factual address to Austrian contacts

and authorities, and included the DOJ reference number on the FedEx envelope,

making it accessible to the public.

**B. Outside Authorized Place and Manner**

Venue was improper: Plaintiffs lived in Florida, and any § 1782 application should have been filed in the Middle District of Florida. *In re Application of Veiga*, 746 F. Supp. 2d 8, 16–17 (D.D.C. 2010).

The manner of service — combining unrelated documents, using an incorrect reference number, and providing a disconnected family cell number in official DOJ communications — is inconsistent with any DOJ protocol and suggests personal or foreign-directed action.

## C. Motivated by Foreign, Not U.S., Interests

The primary beneficiary was Austria, not the United States. Batista knew Plaintiffs were adverse parties in federal civil suits against Austria. Assisting Austria under those circumstances contravenes DOJ neutrality and serves foreign rather than U.S. governmental interests. *Majano*, 469 F.3d at 142.

## D. Westfall Act Does Not Bar Plaintiffs' Claims

Section 2679(b)(2) preserves individual-capacity liability for:

- Constitutional claims (*Bivens* actions) — here, Fifth Amendment procedural due process.
- Statutes with express individual liability — here, RICO, 18 U.S.C. § 1964.

7

## E. Skipping Court Review Eliminates Any Color of Authority

- *Lazaridis v. ICMEC*, 760 F. Supp. 2d 109, 113–14 (D.D.C. 2011) — § 1782 requires judicial gatekeeping to prevent circumvention.

- *In re Sealed Case*, 932 F.3d 915, 923 (D.C. Cir. 2019) — comity analysis is required before bypassing treaty channels; here, no attempt was made to use them.

No U.S. court reviewed Austria's request, removing any possible argument that Defendants acted under lawful DOJ authority.

## F. – Austria Could Not Have Obtained Assistance Through Proper Channels

- **Treaty Barriers:** Under Article 2(3)(a)–(b) of the U.S.–Austria MLAT, a request should not be made for offenses without "serious consequences" or where the assistance sought is disproportionate to the expected penalty. A $988 alleged insurance fraud would plainly fail these standards.

- **No Reasonable Suspicion:** Article 1(3) requires facts establishing reasonable suspicion if coercive measures are needed. Austria's vague allegations (unknown time, place, victims, and no authenticated evidence) fail to meet this burden.

- **Evidentiary Deficiency:** Article 4(2)(b) demands a statement of facts, applicable law, and necessary details. None of this exists in the record; no sworn evidence was transmitted.

- **Security/Essential Interests Exception:** Article 3(1)(b) allows denial if assistance would prejudice U.S. essential interests — here, aiding a foreign sovereign in proceedings directly adverse to ongoing U.S. litigation by the same plaintiffs.

- **Outcome:** Even through proper MLAT channels, DOJ would have had to deny Austria's request. This underscores that Batista and Charles's informal assistance not only bypassed legal process, but attempted something that could not have been lawfully approved.

In or about October 2022, following threats from Austria-affiliated attorney Dale Webner that Plaintiffs would face "Austrian reprisals through corrupt connections in the U.S. government," Plaintiffs sent a written warning to the Attorney General and the Office of International Affairs. The letter expressly informed DOJ of Plaintiffs' pending federal lawsuits against the Republic of Austria and cautioned that Austrian officials might attempt to misuse U.S. legal assistance mechanisms to maliciously prosecute Plaintiffs. Notably, the sole alleged basis for Austria's criminal subpoenas—the purported forgery of a $988 Miami optometrist invoice— was demonstrably false, as the invoice's authenticity was already established in

9

publicly available filings in the docket of the Middle District of Florida (accessible via PACER). This contemporaneous warning and the availability of exculpatory evidence underscore that Austria's request could not have met even the minimal "reasonable suspicion" and evidentiary requirements under the U.S.–Austria MLAT.

**E. Irregularities in DOJ Processing and Reference Numbers**

It is implausible and administratively irregular that the same DOJ reference number — CRM-182-86009 — was assigned to two distinct individuals, Plaintiffs Zavadovsky and Dvoinik, in connection with separate Austrian criminal subpoenas. Although they are spouses, each is a separate legal person entitled to individual due process. The irregularity is heightened by the fact that in a later, unrelated matter in April 2023, Ms. Batista's case carried the remarkably similar number CRM-182-86049 — differing by only forty units. Given the five-month gap between November 2022 and April 2023, it is statistically improbable that the Criminal Division's Office of International Affairs assigned only forty reference numbers during that period. This numerical sequence anomaly strongly suggests that the number in Plaintiffs' matter was fabricated or otherwise not generated through standard DOJ tracking protocols. Plaintiffs submitted a FOIA request on April 21, 2025, seeking records to which the DOJ has refused to respond after a

timely acknowledgment, further undermining the credibility of the claimed "official" designation. Such irregularities indicate conduct outside the scope of authorized duties under *Haddon v. United States*, 68 F.3d 1420, 1424 (D.C. Cir. 1995), and *Majano v. United States*, 469 F.3d 138, 142 (D.C. Cir. 2006).

## V. CONCLUSION

In *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637–38 (1952) (Jackson, J., concurring), the Supreme Court held that when the Executive acts contrary to the express or implied will of Congress, its authority is at its "lowest ebb" and can be sustained only if the action falls within the President's exclusive constitutional powers. Congress has spoken directly in this field by enacting the U.S.–Austria Mutual Legal Assistance Treaty (18 U.S.C. § 3512), 28 U.S.C. § 1782, and multiple criminal statutes that impose liability for aiding and abetting foreign principals, including the Foreign Agents Registration Act (22 U.S.C. § 611 et seq.), 18 U.S.C. § 951, and espionage-related provisions in 18 U.S.C. §§ 793– 798. These enactments require strict compliance with Central Authority procedures, judicial oversight, and substantive thresholds such as probable cause, proportionality, and national security review before assisting a foreign government. By bypassing these statutory commands to secretly serve untranslated foreign criminal process in aid of a dubious $988 allegation—despite public exculpatory

11

evidence—Defendants Batista and Charles acted in direct contravention of Congress's will. Their conduct, taken at the "lowest ebb" of Executive power, cannot be shielded by Westfall certification and must be deemed ultra vires and outside the scope of federal employment.

THEREFORE, the Plaintiffs respectfully request that the Court:

1. Deny Westfall Act substitution for Defendants Batista and Charles;

2. Strike the certification as to these Defendants; and

3. Permit Plaintiffs' individual-capacity claims, including constitutional and RICO claims, to proceed.

**Respectfully submitted,**

/s/ Elena Dvoinik
Elena Dvoinik
1413 Crescent Hills Dr
Tallahassee, FL 32303
elena.dvoinik@yahoo.com

/s/ Boris Zavadovsky
Boris Zavadovsky
1413 Crescent Hills Dr
Tallahassee, FL 32303

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to LCvR 7(m), Plaintiffs certify that they conferred in good faith with counsel for the United States regarding the relief sought in Plaintiffs' Opposition to the Westfall Certification. Counsel for the United States stated that the United States opposes the Motion and the relief requested.

Dated: August 18, 2025

Respectfully submitted,

Elena Dvoinik
/S/
Plaintiff, Pro Se

Boris Zavadovsky
/S/
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on this 18 day of August, 2025, I served the foregoing Opposition to Westfall Certification Regarding Certain Defendants, along with all exhibits, via the Court's CM/ECF system, which will send notice to all registered counsel of record, including Mr. **Jeremy P. Simon** – Counsel for the United States, Mr. **Dale F. Webner** – Pro Se, Ms. **Elke U**. Rolff – Pro Se. I also served all documents via Counsel and Pro Se parties via e-mails on record.

Dated: August 18, 2025

Respectfully submitted,

Elena Dvoinik
/S/
Plaintiff, Pro Se

Boris Zavadovsky
/S/
Plaintiff, Pro Se