**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BORIS ZAVADOVSKY, et al., | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 25-1008 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 2, 9, 10, 15, 24, 31 |
| | : | | 36, 43, 49, 50, 60, |
| REPUBLIC OF AUSTRIA, et al., | : | | 68, 69, 73, 78, 83, |
| | : | | 87 |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING ATTORNEY DEFENDANTS' MOTION TO DISMISS (ECF NOS. 9, 15, 24); GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS (ECF NO. 73); GRANTING AUSTRIAN DEFENDANTS' MOTION TO QUASH SERVICE OF PROCESS AND SET ASIDE THE CLERK'S ENTRIES OF DEFAULT AGAINST THEM (ECF NO. 78); DENYING PLAINTIFFS' MOTION FOR DISCOVERY (ECF NO. 2); DENYING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT AGAINST ATTORNEY DEFENDANTS (ECF NO. 10); DENYING PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ATTORNEY DEFENDANTS (ECF NO. 31); DENYING PLAINTIFFS' MOTION FOR JUDICIAL NOTICE AND PROTECTIVE ORDER (ECF NO. 36); DENYING PLAINTIFFS' MOTION TO STRIKE ATTORNEY DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENT TO THEIR MOTION FOR SANCTIONS (ECF NO. 43); DENYING PLAINTIFFS' MOTION TO STRIKE THE UNITED STATES'S NOTICE REGARDING SERVICE ON AUSTRIA (ECF NO. 49); DENYING PLAINTIFFS' MOTION TO STRIKE THE UNITED STATES'S WESTFALL CERTIFICATION (ECF NO. 50); DENYING PLAINTIFFS' MOTION TO DEFER RULING ON THE WESTFALL CERTIFICATION AND FOR LIMITED, TARGETED DISCOVERY (ECF NO. 60); GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO NARROW CLAIMS AS TO SOVEREIGN DEFENDANTS (ECF NO. 68); DENYING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST AUSTRIAN DEFENDANTS (ECF NO. 69); DENYING PLAINTIFFS' MOTION TO FILE A SUR-REPLY (ECF NO. 83); DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL NOTICE OF NEW FACTS AND EXHIBITS (ECF NO. 87).**

## I.  INTRODUCTION

*Pro se* plaintiffs Boris Zavadovsky and Elena Dvoinik ("Plaintiffs") sue for harms arising

from a purported international enterprise of extortion, theft, and obstruction of justice.

According to Plaintiffs, this enterprise traces back to a dispute with Austrian authorities that

came to a head in 2021, when Austrian officials initiated a criminal investigation against

Plaintiffs and seized some of their property in Austria.  Plaintiffs have filed multiple cases before

federal and state courts—including a prior case before this Court—involving claims ultimately stemming from this dispute.

In their present lawsuit, Plaintiffs sue three groups of defendants: (1) the Republic of Austria, various Austrian government ministries, and the Austrian Embassy in Washington, D.C. ("Austrian Defendants"); (2) attorneys Elke Rolff and Dale Webner ("Attorney Defendants"), who represented certain Austrian defendants in Plaintiffs' prior cases; and (3) various U.S. federal government employees in their individual capacities ("Federal Defendants").  Plaintiffs bring claims for conversion, defamation, intentional infliction of emotional distress ("IIED"), violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and RICO conspiracy, *id.* § 1962(d).

In this memorandum opinion, the Court resolves motions from all groups of defendants ("Defendants")—(1) Attorney Defendants' motion to dismiss, (2) Federal Defendants' motion to dismiss, and (3) Austrian Defendants' motion to quash service of process and set aside entries of default against them—as well as a slew of other motions filed by Plaintiffs.  Because there has already been extensive litigation involving many of the same facts, claims, and parties, including against Attorney Defendants, the Court finds that the principle of *res judicata* precludes further litigation of Plaintiffs' claims against them.  Furthermore, although Plaintiffs have not sued Federal Defendants previously, the Court finds that it lacks jurisdiction to entertain Plaintiffs' claims against them.  And Plaintiffs have not properly served Austrian Defendants.  Accordingly, the Court grants Defendants' motions and denies Plaintiffs' motions.[1]

---

[1] With the exception of Plaintiffs' motion to narrow claims as to sovereign defendants, which the Court grants in part and denies in part.  *See infra* note 2.

## II. BACKGROUND

### A. Factual Background

Plaintiff Boris Zavadovsky is a retired physician who previously worked at a U.S. Army hospital in Germany. *See* Am. Compl. ¶ 20, ECF No. 19. He is married to Plaintiff Elena Dvoinik, a legal scholar. *See id.* ¶ 21. Plaintiffs are naturalized U.S. citizens, reside in Tallahassee, Florida, and previously owned a vacation home in Gloggnitz, Austria. *See id.* Their suit seeks redress for an "ongoing transnational racketeering enterprise involving unlawful surveillance, defamation, extortion, theft of property and conversion, obstruction of justice, fraud on the court, and the laundering of Austrian public funds through sham U.S. legal proceedings coordinated by foreign agents and aided by U.S. officials." *Id*. ¶ 19.

According to their amended complaint, Plaintiffs became targets of this enterprise in the spring of 2021, when a Russian citizen who was staying in their Austrian home falsely reported to Austrian authorities that Plaintiffs were producing "false passports and certificates." *Id.* ¶ 43. A few months later, while Plaintiffs were in the United States, Austrian authorities initiated a criminal investigation against Plaintiffs, and several police officers, including Mario Rabl and Susanne Hoflinger, conducted a warrantless search of Plaintiffs' Austrian home and seized property held there, including business archives, antique coins, tax documents, and personal records. *See id.* ¶¶ 44–46. Although Austrian authorities terminated this initial investigation, a new investigation was later instituted based on testimony from Rabl concerning Plaintiffs' alleged tax and insurance fraud. *See id.* ¶¶ 140–41.

### B. Procedural Background

Unable to find relief in Austria for the saga above, Plaintiffs have taken to courts in the United States. Plaintiffs have filed multiple cases against Austrian officials, their attorneys, and

U.S. government officials alleged to have wronged them, including in the Middle District of Florida; the Southern District of Florida; the Thirteenth Judicial Circuit Court of Hillsborough County, Florida; the Southern District of New York; and now, the District of Columbia.  And this is not the first time that Plaintiffs have sued in this Court.  In *Zavadovsky v. Rabl* ("*Zavadovsky I*"), No. 24-1997, 2025 WL 2466024 (D.D.C. Aug. 27, 2025), Plaintiffs sued Austrian officers Rabl and Hoflinger and a United States Secret Service ("Secret Service") agent, alleging that Rabl and Hoflinger engaged in fraud and defamation by informing the Secret Service that Plaintiffs were being investigated for tax and insurance fraud in Austria.  This Court dismissed that case on several grounds, including *res judicata*, because a prior decision in the Eleventh Circuit involving similar claims barred Plaintiffs' subsequent litigation.  *See id.* at *6–7; *Dvoinik v. Philipp*, No. 23-12240, 2024 WL 95440, at *4 (11th Cir. Jan. 9, 2024).

Now, Plaintiffs again bring suit in this Court, and against many of the same defendants as in other actions.  Their claims against Austrian Defendants—initially for conversion, defamation, IIED, RICO, and RICO conspiracy, and later narrowed to conversion and IIED, *see* Pls.' Mot. Narrow Claims as to Sovereign Defs., ECF No. 68[2]—focus on actions taken in connection with U.S. actors and courts that purportedly supported an enterprise to "[l]aunder Austrian public funds under the false pretext of legal representation" and "[s]uppress Plaintiffs' civil litigation through defamation, obstruction, and procedural fraud."  Am. Compl. ¶¶ 296, 302.  Plaintiffs allege, for example, that Austrian Defendants retained Rolff and Webner—despite their failure to register as foreign agents of Austria under the Foreign Agents Registration Act ("FARA"), 22

---

[2] The Court grants Plaintiffs' motion insofar as Plaintiffs seek to withdraw their defamation, RICO, and RICO conspiracy claims against Austrian Defendants.  But because the Court ultimately grants Austrian Defendants' motion to quash service of process and set aside entries of default against them, the Court otherwise denies Plaintiffs' motion.

U.S.C. §§ 611–21—and directed them "to obstruct justice in U.S. civil proceedings" involving Plaintiffs, such as by filing false affidavits and making false promises. *See, e.g.*, Am. Compl. ¶¶ 4, 6, 8–9. Plaintiffs bring claims for conversion, defamation, IIED, RICO, and RICO conspiracy against Attorney Defendants based on these allegations. Similarly, Plaintiffs claim that Austrian Defendants colluded with U.S. Department of Justice ("DOJ") officials to obstruct Plaintiffs' proceedings, including by having DOJ officials serve "foreign criminal complaint materials" on Plaintiffs and file "unauthorized" *notes verbales*—diplomatic communications from Austria—in various proceedings. *See, e.g.*, Am. Compl. ¶¶ 5–6, 207. Federal Defendants are being sued for conversion, RICO, and RICO conspiracy.

Plaintiffs seek monetary and equitable relief against Defendants. Among other things, they request over $10 million in compensation for the real and personal property seized by Austrian officials in 2021 and an order from this Court compelling the return of this property, enjoining Attorney Defendants from appearing in future litigation without FARA registration, enjoining Austrian Defendants from submitting forged *notes verbales* and affidavits in U.S. courts, and enjoining Federal Defendants from making further unauthorized filings of diplomatic materials. *See id.* ¶¶ 440–54.

### III.  LEGAL STANDARDS

#### A.  *Pro Se* Pleading Standards

A *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In an action brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint." *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing to *Richardson v. United States*, 193 F.3d

545, 548 (D.C. Cir. 1999)).  Nevertheless, this "liberal pleading standard . . . does not invariably apply when the litigant is a licensed attorney."[3]  *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024).  And whether a licensed attorney or not, a *pro se* plaintiff must plead "factual matter" sufficient to permit the court to infer "more than the mere possibility of misconduct."  *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Furthermore, "even a pro se plaintiff must meet his burden of proving that the Court has subject matter jurisdiction over the claims."  *Fontaine v. Bank of Am., N.A.*, 43 F. Supp. 3d 1, 3 (D.D.C. 2014); *see also Bickford v. Gov't of U.S.*, 808 F. Supp. 2d 175, 179 (D.D.C. 2011).

### B.  Motion to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[3] Courts in this District have declined to apply a liberal pleading standard when a *pro se* plaintiff has had "formal legal training" and "years of legal work experience."  *See, e.g.*, *Holloway v. Garland*, No. 24-cv-226, 2025 WL 14137, at *1 n.1 (D.D.C. Jan. 1, 2025) (quoting *Spence*, 109 F.4th at 539).  Here, Plaintiff Elena Dvoinik alleges that she is a "legal scholar who holds an LL.M. from the Florida State University College of Law."  Am. Compl. ¶ 2.  Dvoinik thus appears to have formal legal training.  Nevertheless, the Court does not rely on application of the normal pleading standard to dismiss Plaintiffs' claims against Attorney Defendants and Federal Defendants.  As set forth below, even under a liberal pleading standard, all of these claims must be dismissed under *res judicata*, for lack of subject-matter or personal jurisdiction, or for failure to state a claim.

1.  Rule 12(b)(1)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing the Court's subject-matter jurisdiction. *See Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 845 F. Supp. 2d 288, 294 (D.D.C. 2012) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). In considering a Rule 12(b)(1) motion, the court must "treat the complaint's factual allegations as true," yet need not accept "a plaintiff's legal conclusions" or "inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 9 (D.D.C. 2024). And the court "need not limit itself to the allegations of the complaint," but can "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Grand Lodge*, 185 F. Supp. 2d at 14 (quoting *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000)).

2.  Rule 12(b)(2)

"A plaintiff also bears the burden of establishing the Court's personal jurisdiction over a defendant who moves to dismiss the claims against him under Rule 12(b)(2)." *Bradley v. DeWine*, 55 F. Supp. 3d 31, 37 (D.D.C. 2014). To meet this burden, a plaintiff "must plead specific facts providing a basis for personal jurisdiction," *see Walsh v. Hagee*, 900 F. Supp. 2d 51, 56 (D.D.C. 2012) (quoting *Gomez v. Aragon*, 705 F. Supp. 2d 21, 23 (D.D.C. 2010)), and "cannot rely on conclusory allegations," *see Bradley*, 55 F. Supp. 3d at 37.

### 3. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests whether a plaintiff has properly stated a claim upon which relief can be granted.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  In deciding a Rule 12(b)(6) motion, the court can consider "the facts alleged in the complaint," "documents attached as exhibits or incorporated by reference in the complaint," and "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint."  *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citation modified).  The court must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor."  *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (citation modified).  Such factual allegations must nevertheless "be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555–56 (citation modified).  Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Moreover, the court need not accept a plaintiff's legal conclusions as true or presume the truth of legal conclusions couched as factual allegations.  *See id.*; *Iqbal*, 556 U.S. at 678.

### IV.  ANALYSIS

Attorney Defendants move to dismiss Plaintiffs' claims against them based on *res judicata* and for failure to state a claim under Rule 12(b)(6).  *See* Att'y Defs.' Mot. Dismiss, ECF No. 25.[4]  Federal Defendants move to dismiss the claims against them under Rule 12(b)(1) for

---

[4] Attorney Defendants initially moved to dismiss Plaintiffs' complaint on May 7, 2025. *See* Att'y Defs.' Mot. Dismiss, ECF No. 9.  Around the same time, Plaintiffs moved for entry of default against Rolff and Webner due to alleged procedural deficiencies.  *See* Pls.' Suppl. Notice

lack of subject-matter jurisdiction, under Rule 12(b)(2) for lack of personal jurisdiction as to one Federal Defendant, and under Rule 12(b)(6) for failure to state a claim.  *See* Fed. Defs.' Mot. Dismiss, ECF No. 73.  And Austrian Defendants challenge Plaintiffs' service of process and the Clerk of Court's entry of default against them.  *See* Austrian Defs.' Mot. Set Aside Entry of Default & Quash Serv. Process ("Austrian Defs.' Mot."), ECF No. 78.  As set forth below, the Court grants the three motions.

### A.  Attorney Defendants' Motion to Dismiss

Plaintiffs bring claims for conversion, defamation, IIED, RICO, and RICO conspiracy against Attorney Defendants.  According to Plaintiffs, Attorney Defendants acted under the direction of Austrian authorities—whom they represented in Plaintiffs' prior U.S. proceedings— to obstruct justice in those proceedings, including by "subm[itting] false affidavits and pleadings designed to deceive U.S. courts," "transmit[ting] forged documents in multiple . . . proceedings," and "engag[ing] in threats, extortion, obstruction of justice, and the unlawful use of foreign criminal materials."  Am. Compl. ¶¶ 9–10.  Attorney Defendants also allegedly participated in a scheme to launder "embezzled Austrian budget funds," using their "fictitious legal services" as grounds for receiving funds from Austrian officials.  *Id.* ¶ 58.  Attorney Defendants argue that

---

Regarding Procedural Defects in Defs.' Filings & Renewed Mot. Clerk's Default & Sanctions, ECF No. 10.  The Court denies Plaintiffs' motion for entry of default.  Although Plaintiffs argue that Rolff and Webner did not sign initial motions for extension of time and for a CM/ECF password, this is patently false: the motions were signed in an electronic /s/ format.  *See* Att'y Defs.' Mot. Extension Time, ECF No. 4; Att'y Defs.' Mot. CM/ECF Password, ECF No. 5.  The Court also rejects Plaintiffs' arguments that Rolff and Webner, proceeding *pro se*, were not authorized to appear or submit filings in this matter.

Although Attorney Defendants dispute Plaintiffs' motion for entry of default against them, they nevertheless refiled pleadings with wet signatures, including their motion to dismiss. *See* Att'y Defs.' Mot. Dismiss, ECF No. 15.  Then, after Plaintiffs filed an amended complaint, Attorney Defendants filed their final, operative motion to dismiss the amended complaint and memorandum in support thereof.  *See* Att'y Defs.' Mot. Dismiss, ECF Nos. 24, 25.

the claims against them must be dismissed as a matter of *res judicata* or, in any event, under Rule 12(b)(6) because Plaintiffs have failed to state a cause of action for their claims. *See generally* Att'y Defs.' Mot. Dismiss. As set forth below, the Court dismisses Plaintiffs' claims against Attorney Defendants on both grounds. Finally, the Court considers and denies a request by Plaintiffs to impose sanctions on Rolff and Webner.

### 1. Res Judicata

Attorney Defendants first argue that Plaintiffs' claims are subject to dismissal based on *res judicata*, which "prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Because other federal and state courts have rendered decisions on the merits regarding claims against Attorney Defendants Rolff and Webner that are substantially like the ones presently before this Court, the Court agrees that Plaintiffs' claims against Attorney Defendants must be dismissed.

Under the doctrine of *res judicata*, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine bars "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). *Res judicata* serves "to conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent . . . piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "A subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid

10

judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006).

To determine whether the prior litigation involved the same claim under the first prong of *Smalls*, a court reviews whether the two actions share "the same 'nucleus of facts.'" *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). That inquiry hinges on "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) (quoting Restatement (Second) of Judgments § 24(2) (1982)). "Under the second prong of the *Smalls* test, a plaintiff need not name the exact same defendant in order for *res judicata* to preclude litigation." *Middleton v. U.S. Dep't of Labor*, 318 F. Supp. 3d 81, 87 (D.D.C. 2018). Additionally, a previous action that resulted in a dismissal for failure to state a cause of action "presents a ruling on the merits with res judicata effect" for the purposes of the final-judgment requirement under *Smalls*. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

All the prongs of the *Smalls* test are satisfied here. As to the first, Plaintiffs' allegations against Attorney Defendants arise from the same "nucleus of facts" as those in several previous cases, including *Zavadovsky v. Peschorn*, No. 24-CA-4077 (Fla. 13th Cir. Ct. 2024) ("*Fla. State Case*"), and *Dvoinik v. Rolff*, No. 8:23-cv-623, 2023 WL 3276398 (M.D. Fla. May 5, 2023) ("*M.D. Fla. Case*") [5] *See* Att'y Defs.' Mot. Dismiss Ex. 1, Compl., *Fla. State Case* ("*Fla. State*

---

[5] There are other dismissed cases brought by Plaintiffs that share the same "nucleus of facts," including one dismissed by this Court. *See Zavadovsky I*. For purposes of Attorney Defendants' *res judicata* argument, the Court focuses on the *Fla. State Case* and the *M.D. Fla. Case*.

*Case* Compl."), ECF No. 25-1; Am. Compl., *M.D. Fla. Case* ("*M.D. Fla.* Compl."), No. 8:23-cv-623, ECF No. 6.

In the *Fla. State Case*, Zavadovsky and Dvoinik alleged that Rolff and/or Webner filed affidavits containing false statements, *Fla. State Case* Compl. ¶¶ 20–21, 88–100, 121; made false promises to resolve their problems, *id.* ¶¶ 58–60; received illegal payments from Austrian authorities, *id.* ¶¶ 52, 69–75; engaged in intimidation, humiliation, harassment, and threats, *id.* ¶¶ 78–89, 122, 127; improperly communicated with the Secret Service, *id.* ¶¶ 35–36; and violated FARA provisions, *id.* ¶¶ 53, 57, 77.  The *Fla. State Case* was dismissed for failure to state a cause of action "[b]ased on the act of state doctrine," which prohibits U.S. courts from questioning the validity of official acts of a foreign government, "and Florida litigation privilege," which protects statements made in the course of judicial proceedings.  Att'y Defs.' Mot. Dismiss Ex. 2, *Fla. State Case* Dismissal at 3, ECF No. 25-2.

Substantially similar allegations appear in Plaintiffs' current action.  *See, e.g.*, Am. Compl. ¶¶ 9–10, 58, 126–31, 149–62, 181–93.  To be sure, the facts alleged in these two actions are not identical.  For example, in the *Fla. State Case*, Zavadovsky and Dvoinik alleged that Rolff falsely promised to resolve their tax problems, *see Fla. State Case* Compl. ¶¶ 58–60, while in the present case, Plaintiffs further allege that Rolff falsely promised to settle the case, *see* Am. Compl. ¶ 192.  But these facts are "related in time, space, origin, or motivation," *see Stanton*, 127 F.3d at 78 (citation omitted), and thus arise out of the same "nucleus of facts," *Page*, 729 F.2d at 820.  The same is true of all of Plaintiffs' current factual allegations against Attorney Defendants, which, like those in the *Fla. State Case*, arise out of Attorney Defendants' representation of Austrian authorities following their investigations against Plaintiffs and seizure of property in 2021.

12

In the *M.D. Fla. Case*, Zavadovsky and Dvoinik also sued Rolff and Webner, asserting violations of FARA and various state law claims. *M.D. Fla. Case*, 2023 WL 3276398, at *1. An amended complaint in that case reduced the allegations to a single count under FARA alleging that Webner and Rolff did not "register with the Attorney General," which "confused the Plaintiffs, misled them, contributed to the Plaintiff's malicious prosecution in Austria, interfered in the Plaintiff's civil proceedings in the Middle District Court in Florida, and influenced these processes in the interests of the Austrian principals, thereby causing [them] harm." *Id.* (quoting *M.D. Fla.* Compl. ¶¶ 7, 9–10, 62). The *M.D. Fla. Case* was dismissed for failure to state a cause of action because FARA contains no private cause of action. *See M.D. Fla. Case*, 2023 WL 3276398, at *1. Again, substantially similar allegations appear in Plaintiffs' current action. *See, e.g.*, Am. Compl. ¶¶ 50, 295.

In the present action, Plaintiffs add new allegations regarding Attorney Defendants' purported conspiracy to "undermine[] Plaintiffs' litigation strategy," including during the dismissed *Fla. State* and *M.D. Fla.* litigations. *See, e.g.*, Am. Compl. ¶ 404. However, the facts giving rise to these allegations are similar to those in other cases brought against Rolff and Webner. *See* Am. Compl. ¶¶ 297–98; *see, also, e.g.*, *Dvoinik v. Rolff*, No. 23-22289, 2023 WL 11795181, at *1 (S.D. Fla. Nov. 27, 2023), *aff'd*, No. 23-14147, 2024 WL 2974475, at *1 (11th Cir. June 13, 2024) (dismissing complaint against Rolff and Webner alleging a RICO enterprise to launder money as "impermissible shotgun pleading"). Whichever previous litigation between Plaintiffs and Attorney Defendants this Court looks to, the same "nucleus of facts" alleged here has been dismissed. And Plaintiffs have not persuaded the Court that any new ground for relief could not have been raised in a prior action. *See Page*, 729 F.2d at 820 (observing that *res judicata* bars parties from relitigating "any ground for relief which they already have had an

opportunity to litigate—even if they chose not to exploit that opportunity—whether the initial judgment was erroneous or not" (citation omitted)).

The other prongs of the *Smalls* test are also satisfied. Zavadovsky and Dvoinik brought the *Fla. State Case* and *M.D. Fla. Case* against the same defendants here, Rolff and Webner, satisfying the second prong, and the dismissals for failure to state a cause of action in both cases are considered final judgments on the merits under the standard articulated in *Haase*, satisfying the third prong. *See* 835 F.2d at 906. Under the fourth prong of the *Smalls* test, the prior court must have had "competent jurisdiction" to decide the case. The Thirteenth Judicial Circuit Court of Hillsborough County and the District Court for the Middle District of Florida are unquestionably competent courts with full jurisdiction to decide a dispute involving Florida residents. Indeed, these courts are the most obvious venues for Zavadovsky's and Dvoinik's suits given their residence in Florida.

Plaintiffs raise several counterarguments, none of which are availing. First, Plaintiffs argue that there is no final judgment with preclusive effect in the *Fla. State Case*, as Zavadovsky and Dvoinik filed a motion for rehearing in the appellate court and a motion to vacate the judgment in the trial court. *See* Pls.' Resp. in Opp'n to Att'y Defs.' Mot. Dismiss ("Pls.' Opp'n to Att'y Defs.' Mot. Dismiss") at 8–10, ECF No. 27. However, the motion for rehearing has since been denied. *See* Att'y Defs.' Reply to Pls.' Opp'n to Att'y Defs.' Mot. Dismiss ("Att'y Defs.' Reply") Ex. 1, ECF No. 30-1. And Florida Rule of Civil Procedure 1.540(b), pursuant to which the motion to vacate was filed, provides that such a motion "does not affect the finality of a judgment, decree, or order or suspend its operation." Fla. R. Civ. P. 1.540(b). Plaintiffs also argue that a dismissal based on the act of state doctrine is not a final merits adjudication. *See* Pls.' Opp'n to Att'y Defs.' Mot. Dismiss at 7. That is incorrect. *See Nnaka v. Fed. Republic of*

*Nigeria*, No. 1:18-cv-4404, 2019 WL 6831532, at *5 (S.D.N.Y. Aug. 12, 2019) (recognizing that "[t]he act of state doctrine is a substantive defense on the merits" (citation modified)).

Finally, Plaintiffs argue that "material new facts" that were unavailable in prior actions defeat the application of *res judicata* here. *See* Pls.' Opp'n to Att'y Defs.' Mot. Dismiss at 11–12. Plaintiffs focus on purported new evidence relating to *notes verbales* through which Austria objected to Plaintiffs' method of service of process on Austrian defendants in several related actions, including the *Fla. State Case* and the *Zavadovsky I* case previously before this Court. *See* May 13, 2025 Letter from Elena Dvoinik to Austrian Ambassador Petra Schneebauer ("May 13, 2025 Letter"), Am. Compl. Ex. 12. The U.S. Department of Justice ("DOJ") filed these *notes verbales* on behalf of Austria with the Florida state court and with this Court, explaining that Austria had originally transmitted them to the U.S. Department of State. *See* July 3, 2025 Letter from the Department of Justice to Boris Zavadovsky and Elena Dvoinik ("July 3, 2025 Letter"), Pls.' Mot. Judicial Notice & Protective Order Ex. A, ECF No. 36-2. Plaintiffs allege in their amended complaint that the *notes verbales* were forged. *See, e.g.*, Am. Compl. ¶¶ 283–85. Their claimed evidence of forgery consists primarily of responses to a Freedom of Information Act ("FOIA") request that Plaintiffs submitted to the Department of State on April 9, 2025, seeking, among other things, diplomatic communications generated or received by the State Department since 2021 relating to Plaintiffs. *See* Am. Compl. ¶ 211; May 8, 2025 Letter from the Department of State to Elena Dvoinik ("May 8, 2025 Letter"), Am. Compl. Ex. 4 at 183–84. On May 8, 2025, in an initial response, the State Department disclosed various responsive records, but not the *notes verbales*. *See* May 8, 2025 Letter. According to Plaintiffs, this response shows that the *notes verbales* were "never received, acknowledged, or issued" by the

United States or Austria, *see* Pls.' Opp'n to Att'y Defs.' Mot. Dismiss at 11, and that Attorney

Defendants took part in "the transmission of forged Notes Verbales," *see* Am. Compl. ¶ 102.

Plaintiffs' argument is without substance. To start, Plaintiffs wrongly claim that the State

Department stated in the May 8, 2025 Letter that "it ha[d] 'no record' of receiving any Notes

Verbales." Am. Compl. ¶ 253. The State Department made no such statement. *See generally*

May 8, 2025 Letter. In fact, in a supplemental response to Plaintiffs, the State Department

disclosed the *notes verbales*. *See* June 18, 2025 Letter from the Department of State to Elena

Dvoinik ("June 18, 2025 Letter"), Pls.' Mot. Judicial Notice & Protective Order Ex. B, ECF No.

36-3. Plaintiffs claim that this subsequent disclosure somehow shows that DOJ colluded with

Austria to forge and file the *notes verbales* in other cases without the State Department's

endorsement. *See generally* Pls.' Mot. Judicial Notice & Protective Order. Not so. As

Alexander Haas, the Director of DOJ's Federal Programs Branch, explained to Plaintiffs—and as

has been this Court's experience in other FOIA matters—"[i]t is the practice of the Department

of State to release documents in tranches as it works to complete FOIA requests." July 3, 2025

Letter at 1. The Court need not accept as true Plaintiffs' alternative tale of forgery and

collusion.[6] *See Lewis v. Bayh*, 577 F. Supp. 2d 47, 56 (D.D.C. 2008).

And even if the Court assumed the *notes verbales* were forged, Plaintiffs' attempt to

circumvent the application of *res judicata* with "new evidence" would fail. "Where the facts that

have accumulated after the first action are enough on their own to sustain the second action, the

new facts clearly constitute a new 'claim,' and the second action is not barred by *res judicata*."

---

[6] For these same reasons, the Court denies Plaintiffs' motion for the Court to take judicial notice of "unauthenticated Note[s] Verbales" and to enter a protective order "prohibiting further misuse of diplomatic communications" by DOJ or Austria. *See* Pls.' Mot. Judicial Notice & Protective Order at 1, 9, ECF No. 36.

*Storey v. Cello Holdings, LLC*, 347 F.3d 370, 384 (2d Cir. 2003).  Here, however, Plaintiffs'

purported new facts—which, in addition to the FOIA responses, include various new allegations

of wrongdoing by U.S. and Austrian actors in the Austrian investigations and subsequent U.S.

litigations—stem from the same nucleus of facts that was at issue in prior related actions.  Those

alleged new facts are insufficient to revive Plaintiffs' barred claims.  *See Misischia v. St. John's*

*Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006); *see also id.* ("The doctrine of res judicata

would become meaningless if a party could relitigate the same issue . . . by merely positing a few

additional facts that occurred after the initial suit." (citation omitted)); *Storey*, 347 F.3d at 384

("[C]laim preclusion may apply where some of the facts on which a subsequent action is based

post-date the first action but do not amount to a new claim.").

### 2.  Failure to State a Claim

Even if Plaintiffs' claims against Attorney Defendants were not barred by *res judicata*,

their dismissal would still be warranted under Rule 12(b)(6) for failure to state a cause of action.

As set forth below, Plaintiffs have failed to state claims for conversion, defamation, IIED, RICO,

or RICO conspiracy.

### a.  Failure to Plausibly Plead a Claim for Conversion

Plaintiffs allege that Attorney Defendants acted in concert with Austrian officials to

misappropriate portions of property, including coins, art, and other valuables, as well as legal

documents associated with the alleged improper search of Plaintiffs' Austrian home in 2021.

Am. Compl. ¶¶ 44, 46, 403–04.  However, as Attorney Defendants observe, the alleged

conversion predates their involvement in Plaintiffs' related litigation, and Plaintiffs otherwise fail

to plausibly allege that Attorney Defendants are liable for conversion of Plaintiffs' property.  *See*

Att'y Defs,' Mot. Dismiss at 19–20.

Under District of Columbia law, conversion is defined as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other full value of the chattel." *Edmonds v. United States*, 563 F. Supp. 2d 196, 202 (D.D.C. 2008) (quoting *Fed. Fire Protection Corp. v. J.A. Jones/Tompkins Builders, Inc.*, 267 F. Supp. 2d 87, 92 n.3 (D.D.C. 2003)). To state a claim for conversion, a plaintiff must allege "(1) an unlawful exercise; (2) of ownership, dominion, or control; (3) over the personal property of another; (4) in denial or repudiation of that person's rights thereto." *Johnson v. McCool*, 808 F. Supp. 2d 304, 308 (D.D.C. 2011) (citation modified) (quoting *Gov't of Rwanda v. Rwanda Working Grp.*, 227 F. Supp. 2d 45, 62 (D.D.C. 2002)); *see also Baltimore v. Dist. of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011).

Here, Plaintiffs have not plausibly pleaded a cause of action for conversion against Attorney Defendants. The alleged conversion of Plaintiffs' property occurred in 2021, a year before Attorney Defendants became involved in Plaintiffs' proceedings. *See* Att'y Defs.' Mot. Dismiss at 19–20; Am. Compl. ¶¶ 44–54. Plaintiffs insist, however, that "[s]ubsequent concealment, obstruction, and litigation misconduct—carried out by Rolff and Webner in D.C. federal court and related communications—perpetuated the unlawful detention and misappropriation of Plaintiffs' property." Pls.' Opp'n to Att'y Defs.' Mot. Dismiss at 22. But that contention lacks factual support. Plaintiffs do not plausibly allege facts supporting that Attorney Defendants exerted "ownership, dominion, or control" over *Plaintiffs'* property. *Johnson*, 808 F. Supp. 2d at 308. Although Plaintiffs assert that Rolff "laundered Austrian funds connected to Plaintiffs' property," *see* Am. Compl. ¶ 403, nothing else in the amended complaint indicates that such funds belonged to Plaintiffs, *see, e.g., id.* ¶¶ 154–60. Indeed, other allegations

18

suggest that these funds were public funds. *See id.* ¶¶ 9, 58, 126. Without "further factual enhancement," the Court need not credit "naked assertion[s]" that Attorney Defendants converted Plaintiffs' property.[7] *Twombly*, 550 U.S. at 557.

### b.  Failure to Plausibly Plead a Claim for Defamation

Plaintiffs allege that between 2021 and 2024, Rolff engaged in a "defamation campaign falsely portraying Plaintiffs as mentally unstable, affiliated with foreign criminal networks, and engaged in financial or insurance fraud." Am. Compl. ¶ 417. Plaintiffs further assert that Attorney Defendants "conspired to fabricate false evidence" in prior proceedings, including by drafting and filing affidavits in the Middle District of Florida containing "insults and defamatory, false statements regarding" Plaintiffs alleged criminal activities. *Id.* ¶¶ 184–86. Attorney Defendants argue that because everything Plaintiffs allege as defamatory was done, said, argued, or filed in relation to judicial proceedings, it is protected by the judicial proceedings privilege under D.C. law. Att'y Defs.' Mot. Dismiss at 22–23.

To state a claim of defamation under District of Columbia law, a plaintiff must plausibly allege: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Beeton v. Dist. of Columbia*, 779 A.2d 918, 923 (D.C. 2001) (citation modified). Meanwhile, the judicial proceedings privilege provides that an attorney "is

---

[7] The Court notes that there is a three-year statute of limitations for unlawful conversion. D.C. Code § 12–301(8). While Plaintiffs and Attorney Defendants argue over when the statute of limitations for this claim commenced, the Court need not address the issue because Plaintiffs fail to state a claim for conversion.

absolutely privileged to publish defamatory matter concerning another in communications preliminary to . . . or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Messina v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006) (quoting Restatement (Second) of Torts § 586 (1977)). "[T]he judicial proceedings privilege applies to the range of potential participants in a legal proceeding—including attorneys, parties, judicial officers, witnesses, and jurors." *Marsh v. Hollander*, 339 F. Supp. 2d 1, 8 (D.D.C. 2004). "It is appropriate for a court, in considering a 12(b)(6) motion, to decide any preliminary questions of absolute privilege such as the judicial proceedings privilege." *Id.* at 7.

In this case, Attorney Defendants argue that Plaintiffs' defamation claim fails at step two of the defamation test because the judicial proceedings privilege applies. Att'y Defs.' Mot. Dismiss at 22–23. The Court agrees. To the extent that Attorney Defendants' alleged statements are defamatory, Plaintiffs generally claim that these statements were "made in the course of, or preliminary to a judicial proceeding" and "related in some way to the underlying proceeding." *Messina*, 439 F.3d at 760 (quoting *Arneja v. Gildar*, 541 A.2d 621, 623 (D.C. 1988)); *see also, e.g.*, Am. Compl. ¶ 420 (asserting that Webner made false statements "in U.S. court filings and pleadings"). The judicial protection privilege is not limited to counsel of record, but applies broadly "to the range of potential participants in a legal proceeding," including, here, Rolff and Webner. *Marsh*, 339 F. Supp. 2d at 8. Furthermore, the privilege is "absolute rather than qualified," protecting an attorney "from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity." *Messina*, 439 F.3d at 760 (quoting *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 338 (D.C. 2001)).

To be sure, the judicial proceedings privilege "has been held to be inapplicable when [a statement] is published to persons not having an interest in or connection to the litigation." *Id.* at 761–62 (citation modified). Here, Plaintiffs allege that Attorney Defendants published certain defamatory remarks to third parties, including "government agencies, consular officials, and potentially the media." Am. Compl. ¶ 421. Nevertheless, the Court agrees with Attorney Defendants that such allegations are not pleaded with enough specificity to state a cause of action for defamation. *See* Att'y Defs.' Reply at 9. "In order to plead defamation, a plaintiff should allege specific defamatory comments . . . by pleading the time, place, content, speaker, and listener of the alleged defamatory matter." *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996). It is not enough to offer nothing more than "vague allegations" that defamatory statements have been spread "all over" to unknown third parties, as Plaintiffs here have done. *Ning Ye v. Holder*, 644 F. Supp. 2d 112, 116 (D.D.C. 2009).

As a final point, the statute of limitations for a defamation claim in the District of Columbia is one year. D.C. Code § 12-301(a)(4). "[T]he statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing." *See Gonzalez Ramos v. ADR Vantage, Inc.*, No. 18-cv-1690, 2021 WL 4462611, at *6 (D.D.C. Sep. 29, 2021) (quoting *McFadden v. Wash. Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 221 (D.D.C. 2013)). At minimum, Plaintiffs had reason to know about the alleged defamatory statements as of May 2023, which is when the *M.D. Fla. Case* was dismissed. *See* No. 8:23-cv-623, 2023 WL 3276398, at *1. The one-year statute of limitations thus expired before the filing of this case in March 2025. As such, Plaintiffs' defamation claim is subject to dismissal not only because it is barred by *res judicata* and falls short of pleading standards, but also because it is untimely.

c.  Failure to Plausibly Plead a Claim for IIED

Plaintiffs allege that Attorney Defendants harassed and threatened Plaintiffs through the course of the various court proceedings.  *See, e.g.*, Am. Compl. ¶ 429.  This harassment had the "purpose and effect of causing severe emotional distress," to the point that Zavadovsky suffered a cardiac event on May 12, 2023, and had to undergo emergency surgery for a "stress-related cardiac episode."  *Id.* ¶¶ 429–30, 433.  Attorney Defendants respond that Plaintiffs' allegations do not come close to meeting the required standard of "extreme and outrageous conduct" to make out an IIED claim.  Att'y Defs.' Mot. Dismiss at 28.

Plaintiffs have not stated a cause of action for IIED.  Under District of Columbia law, a plaintiff claiming intentional infliction of emotional distress must show "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress."  *Kotsch v. Dist. of Columbia*, 924 A.2d 1040, 1045 (D.C. 2007) (citation modified).  Liability for IIED "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," *see Burnett v. Am. Fed'n of Gov't Emps.*, 102 F. Supp. 3d 183, 190 (D.D.C. 2015) (citation omitted), but is instead "found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Sere v. Grp. Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982) (quoting Restatement (Second) of Torts § 46 (1965)).

Here, Plaintiffs' allegations, even if true, cannot possibly rise to the level of "extreme and outrageous" conduct required for an IIED claim.  While Plaintiffs allege "threats," "harassment," and "fraud," none of these allegations appear unconscionable or calculated to cause emotional distress and a concomitant risk of physical injury.  *See, e.g.*, *Hayes v. Chartered Health Plan*,

360 F. Supp. 2d 84, 88 (D.D.C. 2004) (holding that fraud alone is insufficient to state a claim for IIED).  For example, Plaintiffs point to a conference with Webner in which he purportedly "humiliated and harassed" them and asked them to voluntarily withdraw all complaints before it was "too late."  Am. Compl. ¶¶ 225–26.  While Attorney Defendants might have been forceful in expressing their frustration with Plaintiffs' litigation tactics, such behavior is not "utterly intolerable."  *Sere*, 443 A.2d at 37.  Instead, as Attorney Defendants argue, Plaintiffs might be "distressed by the results" of the litigation or perturbed by the contents of certain filings, but this does not mean that Attorney Defendants acted intentionally or recklessly to inflict emotional distress upon Plaintiffs.[8]  *See* Att'y Defs.' Mot. Dismiss at 29.

### d.  Failure to Plausibly Plead Claims for RICO and RICO Conspiracy

In Counts I and II of their complaint, Plaintiffs allege that Attorney Defendants violated the RICO statute, 18 U.S.C. § 1962(c), and RICO conspiracy statute, 18 U.S.C. § 1962(d).  *See* Am. Compl. ¶¶ 294, 389.  Specifically, Plaintiffs bring RICO and RICO conspiracy claims against Attorney Defendants for "engag[ing] in a coordinated scheme to extort legal concessions and suppress protected civil claims" through a pattern of racketeering activity, including threats, intimidation, abuse of diplomatic and legal authority, money laundering, mail and wire fraud, and extortion.  Am. Compl. ¶¶ 368, 390.  Plaintiffs further allege that Attorney Defendants violated FARA by failing to register as agents of a foreign government while "transmitting diplomatic materials, laundering foreign government funds, and filing appearances and pleadings

---

[8] Plaintiffs' IIED claim is also barred by the judicial proceedings privilege.  As explained above, this privilege protects "not only statements that are made in the institution of a lawsuit or in the course of litigation," but also "statements that are made prior to the commencement of litigation, for instance in conferences and other communications preliminary to the proceeding." *Finkelstein*, 774 A.2d at 341 (citation modified).  This privilege thus applies to the litigation tactics about which Plaintiffs complain.

in U.S. courts." *Id.* ¶ 295. The alleged purpose of the RICO enterprise was to "[l]aunder Austrian public funds through U.S.-based shell accounts," "[s]uppress Plaintiffs' civil litigation," "[t]ransmit false affidavits," "[e]vade international sanctions on Russian-linked assets," and "intimidate Plaintiffs." *Id.* ¶ 296.

To state a RICO claim, a plaintiff needs to allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (citation modified). "The RICO Act defines the term 'pattern of racketeering activity' as requiring the commission of at least two predicate racketeering offenses over a ten year period." *Id.* (citing 18 U.S.C. § 1961(5)). "These predicate offenses are acts punishable under certain state and federal criminal laws," including, among other acts alleged here, mail and wire fraud. *Id.* (citing 18 U.S.C. § 1961(1)(B)).

Plaintiffs have previously brought suit under RICO for actions stemming from the purportedly wrongful search and seizure of materials from Plaintiffs' Austrian home in 2021. Yet again, however, Plaintiffs fail to state a cause of action for RICO or RICO conspiracy. Their asserted RICO predicate acts are largely based on Attorney Defendants' involvement in litigation related to the 2021 events. But as another court in this District has recognized, when "the vast majority of the plaintiff's litany of woes delineated in the complaint . . . are all directly related to ongoing, non-frivolous litigation," as is the case here, those allegations "cannot, as a matter of law, form the basis of a RICO complaint." *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014); *see also id.* ("Abusive or sham litigation does not constitute a RICO predicate act."). To hold otherwise "would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim." *Id.* (citation omitted).

The Eleventh Circuit has already affirmed the dismissal of RICO claims by Plaintiffs against Rolff and Webner. *See Dvoinik v. Rolff*, 2024 WL 2974475, at *6. Although Plaintiffs have added new RICO predicate acts to their claim, the underlying factual allegations remain the same, as Plaintiffs again allege that Attorney Defendants participated in a RICO enterprise with Austrian government agencies and officials. Just as in the case before the Eleventh Circuit,

> The complaint alleges that Defendants committed predicate money laundering acts for the RICO enterprise by accepting money from the Austrian government in exchange for providing "legal services" as unregistered foreign agents under FARA. But . . . the complaint fails to provide any supporting details of the alleged RICO enterprise or Defendants' connection to it, apart from being paid for the provision of legal services to Austrian citizens, Austrian government officials, and the Austrian government in connection with Plaintiffs' related civil cases.

> Despite making vague accusations about Defendants' legitimacy, and providing irrelevant details about their law firms, the complaint gives no reason to believe Defendants were not authorized to, or did not in fact provide, such legal services in defense of the related cases. And FARA exempts from registration persons engaged in the legal representation of a disclosed principal. *See* 22 U.S.C. § 613(g).

*Dvoinik v. Rolff*, 2024 WL 2974475, at *5.

*    *    *

Because Plaintiffs' claims against Attorney Defendants arise from the same nucleus of facts that underlies previous claims brought against Rolff and Webner in prior litigation,

25

Plaintiffs' current claims are barred by *res judicata*.[9]  And regardless, Plaintiffs have failed to state a cause of action against Attorney Defendants.  The Court therefore dismisses all claims against Attorney Defendants with prejudice.[10]

### 3.  Plaintiffs' Motion for Sanctions Against Rolff and Webner

After briefing on Attorney Defendants' motion to dismiss was completed, Plaintiffs submitted a motion for the Court to impose sanctions under Federal Rule of Civil Procedure 11 against Rolff and Webner for purported sanctionable conduct, including making arguments in support of their motion to dismiss that Plaintiffs deem frivolous.  *See* Pls.' Consolidated Mot. Sanctions Against Rolff & Webner ("Pls.' Mot. Sanctions"), ECF No. 31.  A few weeks later, Plaintiffs filed a supplement to that motion.  *See* Suppl. Notice of Pls.' Mot. Sanctions, ECF No. 39.  And once Rolff and Webner responded to that supplement, Plaintiffs moved to strike their response.  *See* Pls.' Mot. Strike Resp., ECF No. 43.  In these filings, Plaintiffs allege a myriad of Rule 11 violations by Rolff and Webner in this and other cases.  But Plaintiffs fundamentally misunderstand the purpose of Rule 11.  This Rule is not a tool for plaintiffs—even *pro se* plaintiffs—to confront opposing counsel for raising factual and legal contentions with which the plaintiffs disagree.[11]  Rather, the Rule is meant to "protect the court from frivolous and baseless

---

[9] Because Plaintiffs' claims against Attorney Defendants are barred by *res judicata*, the Court dismisses these claims with prejudice.  *See, e.g.*, *Hinton v. Corr. Corp. of Am.*, No. 08-cv-667, 2009 WL 1649977, at *1 (D.D.C. June 11, 2009); *Howard v. U.S. Dep't of Educ.*, No. 09-cv-1633, 2010 WL 1137499, at *1 (D.D.C. Mar. 22, 2010).

[10] Because the Court grants Attorney Defendants' motion to dismiss, it denies as moot Plaintiffs' motion to serve interrogatories upon Rolff and Webner.  *See* Pls. Mot. Disc., ECF No. 2.

[11] The Court hereby cautions Plaintiffs "that a frivolous Rule 11 sanction motion may itself be a violation of Rule 11."  *Naegele v. Albers*, 355 F. Supp. 2d 129, 145 (D.D.C. 2005).  Plaintiffs should keep in mind that filing additional, baseless motions for sanctions before this Court or others could subject them to sanctions.

filings that are not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings." *In re Carvalho*, 598 B.R. 356, 363 (D.D.C. 2019) (quoting *Cobell v. Norton*, 157 F. Supp. 2d 82, 86 n.8 (D.D.C. 2001)).  In any event, Plaintiffs' alleged Rule 11 violations are wholly without merit.

"Under Rule 11, an attorney or party 'presenting to the court a[ny] pleading, written motion, or other paper . . . certifies that' the filing 'is not being presented for any improper purpose, . . . [that] the claims, defenses, and other legal contentions are warranted[,] . . . [and that] the factual contentions have evidentiary support or [ ] . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" *Id.* (quoting Fed. R. Civ. P. 11(b)).  In considering a Rule 11 motion, "the Court has discretion to decide whether a Rule 11 violation has occurred and what sanctions should be imposed if there has been a violation." *Id.* (quoting *Long v. U.S. Dep't of Justice*, 207 F.R.D. 4, 6 (D.D.C. 2002)).  "Courts do not impose Rule 11 sanctions lightly; such sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings," *see id.* (quoting *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 241 (D.D.C. 2017)), "or that are filed to harass another party," *see id.* (quoting *United States v. Sum of $70,990,605*, No. 12-cv-1905, 2018 WL 4623568, at *5 (D.D.C. Sept. 25, 2018)).

In their motion for sanctions, Plaintiffs argue that Rolff and Webner are purporting to raise arguments on behalf of Austria despite not being authorized to represent Austria.  *See* Pls.' Mot. Sanctions at 1–3.  But Rolff and Webner's invocation of *res judicata* and the act of state doctrine to defend *themselves* against Plaintiffs' claims does not "amount to functional legal representation of a sovereign," as Plaintiffs assert.  Pls.' Mot. Strike Resp. at 2.  And Rolff and Webner have consistently represented to the Court that they are appearing only on behalf of

themselves in this matter. *See, e.g.*, Att'y Defs.' Resp. to Pls.' Mot. Sanctions at 3, ECF No. 37. Plaintiffs next argue that Rolff and Webner knowingly asserted frivolous and baseless arguments in support of their motion to dismiss. *See* Pls.' Mot. Sanctions at 3; Suppl. Notice of Pls.' Mot. Sanctions at 1–2. But as shown by the Court's dismissal of Plaintiffs' claims, those arguments were neither frivolous nor baseless.[12] Plaintiffs finally argue that Rolff and Webner engaged in procedural misconduct, including by signing documents in an electronic /s/ format. *See* Pls.' Mot. Sanctions at 3–4. But if the Court accepted this argument, it would have no choice but to find that Plaintiffs have also violated Rule 11. *See, e.g.*, Pls.' Mot. Strike Resp. at 5–6 (signing the motion "/s/ Elena Dvoinik" and "/s/ Boris Zavadovsky"). In any event, the Court has already rejected this argument. *See supra* note 4.

Plaintiffs' motion for sanctions against Rolff and Webner is undeserved. The Court therefore denies this motion, *see* Pls.' Mot. Sanctions, along with the motion to strike Rolff and Webner's response to the supplement, *see* Pls.' Mot. Strike Resp.

---

[12] Plaintiffs primarily take issue with Rolff and Webner's arguments regarding the preclusive effect of the *Fla. State Case*. *See* Pls.' Mot. Strike Resp. at 3. As explained above, Plaintiffs argued in their opposition to the motion to dismiss that the *Fla. State Case* was not a final judgment because their motion to vacate that judgment, filed under Florida Rule of Civil Procedure 1.540(b), remained pending. Rolff and Webner countered, accurately, that Rule 1.540(b) provides that such a motion "does not affect the finality of a judgment." Fla. R. Civ. P. 1540(b). In pushing for Rule 11 sanctions, Plaintiffs argue that Rolff and Webner misstated the law and sought to mislead the Court. *See* Pls.' Mot. Strike Resp. at 3. Plaintiffs then present the Court with a Florida rule of appellate procedure and three cases that, according to Plaintiffs, support the proposition that "a judgment subject to a pending 1.540 motion is not truly final for purposes of preclusion." *Id.* Nevertheless, Plaintiffs cite language and propositions in these authorities that are misquoted or flat out false. Indeed, at least one of their cited cases— *Beaucage v. Beaucage*, 583 So.2d 846 (Fla. 5th DCA 1991)—simply does not exist. The Court is thus left to wonder whether it is Plaintiffs, rather than Defendants Rolff and Webner, who have sought to mislead the Court, or at the very least failed to undertake an "inquiry reasonable under the circumstances" to certify that their "claims, defenses, and other legal contentions are warranted by existing law." Fed. R. Civ. P. 11(b)(2).

### B. Federal Defendants' Motion to Dismiss

The Court now turns to Federal Defendants' motion to dismiss. *See* Fed. Defs.' Mot. Dismiss, ECF Nos. 73, 74. Plaintiffs assert claims against current or former federal government employees in their individual capacities based on alleged conversion, RICO violations, and RICO conspiracy. The government employees named as defendants are: (1) Assistant United States Attorney ("AUSA") Randy Harwell, the civil chief of the United States Attorney's Office ("USAO") for the Middle District of Florida; (2) AUSA Stephanie Johnson of the USAO for the District of Columbia; (3) former DOJ attorney Ross Slaughter; (4) DOJ attorney Liudmila Batista; (5) former DOJ employee Michelle Charles; and (6) Kevin Tyrrell of the Secret Service. *See* Am. Compl. ¶¶ 11–16.

Plaintiffs challenge various actions taken by these individuals in connection with Austrian officials' criminal investigations of Plaintiffs and Plaintiffs' various U.S. legal proceedings. For one, Plaintiffs allege that Batista, at Austria's request, served "foreign criminal complaint materials" on Plaintiffs in Florida "extrajudicially." Am. Compl. ¶¶ 5, 14, 207–09, 249–50. Plaintiffs also sue Charles, a legal assistant, for her role in assisting Batista in mailing two letters containing these materials to Plaintiffs via Federal Express ("FedEx"). *Id.* ¶¶ 14–15, 210, 213, 349. As for Harwell, Slaughter, and Johnson, Plaintiffs allege that these DOJ attorneys mailed or filed falsified *notes verbales*—through which Austria objected to Plaintiffs' service of process in the *Fla. State Case* and *Zavadovsky I*—with the courts in those cases. *See* Am. Compl. ¶¶ 12–13, 61–62, 273, 276, 361. And Plaintiffs sue Tyrrell for his role in responding on behalf of the Secret Service to a FOIA request at issue in *Zavadovsky I* and submitting a declaration in support of the government's motion for summary judgment in that case. *See* Am. Compl. ¶¶ 16, 241. According to Plaintiffs, such actions are part of a criminal RICO enterprise.

*See id.* ¶ 302.  Finally, in their conversion claim, Plaintiffs allege that Harwell and Slaughter "unlawfully accessed privileged discovery materials" and that Batista, Charles, and Johnson "unlawfully obtained and used Plaintiffs' personal litigation records, including FOIA and discovery documents."  *Id.* ¶¶ 405, 408.

Although Plaintiffs sue Federal Defendants in their individual capacities, the United States has filed a certification pursuant to the Westfall Act, 28 U.S.C. § 2679(d), substituting itself as the proper defendant with respect to claims sounding in tort.  *See* Notice Attaching Westfall Certification ("Westfall Certification"), ECF No. 46-1.  Plaintiffs, however, moved to strike the United States's Westfall Certification, arguing that Federal Defendants acted outside the scope of their employment in taking the challenged actions.  *See* Pls.' Mot. Strike Westfall Certification, ECF No. 50.  Plaintiffs then moved for the Court to defer a ruling on this motion and instead authorize limited discovery on the "scope-of-employment issue."  *See* Pls.' Mot. Defer Ruling on Westfall Certification & Limited, Targeted Disc. ("Pls.' Mot. Limited Disc."), ECF No. 60.

Federal Defendants oppose the motions above and move to dismiss Plaintiffs' claims against them.  Federal Defendants assert several independent bases for dismissal.  They argue that all of Plaintiffs' claims against them should be dismissed for lack of subject-matter jurisdiction because the claims are patently insubstantial and because Plaintiffs lack standing to assert them.  *See* Fed. Defs.' Mot. Dismiss at 11–14.  Federal Defendants further contend that subject-matter jurisdiction is lacking as to Plaintiffs' claim for conversion because the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), under which this claim must proceed, does not permit recovery against individual federal employees.  *See id.* at 14–15.  And even if the Court possesses jurisdiction, Federal Defendants argue that Plaintiffs fail to plausibly plead a

conversion claim. *See id.* at 20–21. Next, Federal Defendants argue that Plaintiffs' RICO claims are barred by qualified immunity and the judicial proceedings privilege, *see id.* at 23–26, and that in any event, Plaintiffs fail to plausibly plead those claims too, *see id.* at 26–31. Finally, Federal Defendants argue that Plaintiffs have failed to plead any basis for the Court to assert personal jurisdiction over Federal Defendant Harwell. *See id.* at 32.

The Court first addresses and denies Plaintiffs' motions to strike the United States's Westfall Certification and for limited discovery. It then addresses arguments relating to Federal Defendants' motion to dismiss. As set forth below, the Court finds that it lacks subject-matter jurisdiction over all of Plaintiffs' claims against Federal Defendants and personal jurisdiction over Harwell, and accordingly dismisses these claims.[13]

### 1. Westfall Certification

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007); *see also* 28 U.S.C. § 2679(b)(1). "Under the Westfall Act, when a federal employee is sued in his individual capacity, the Attorney General . . . may certify 'that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Plevnik v. Sullivan*, 146 F.4th 1174, 1182 (D.C. Cir. 2025) (quoting 28 U.S.C. § 2679(d)(1)). Pursuant to such certification, the United States is substituted as the sole defendant. *See* 28 U.S.C. § 2679(d)(1).

---

[13] Because the Court concludes that it lacks subject-matter jurisdiction as to all claims and personal jurisdiction over Federal Defendant Harwell, it does not determine whether dismissal is also warranted for failure to state a claim, due to qualified immunity, or based on the judicial proceedings privilege. *See Terry v. First Merit Nat'l Bank*, 75 F. Supp. 3d 499, 507 (D.D.C. 2014).

Recovery against the United States is then allowed "because, for certain torts, the United States has waived its sovereign immunity from litigation under the Federal Tort Claims Act." *Trump v. Carroll*, 292 A.3d 220, 226–27 (D.C. 2023).

A Westfall certification "constitute[s] *prima facie* evidence that the employee was acting within the scope of his employment." *Council of Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (per curiam).  Nevertheless, a plaintiff can rebut the certification by "alleg[ing] sufficient facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment." *Wuterich v. Murtha*, 562 F.3d 375, 378 (D.C. Cir. 2009) (citation modified).  "If a plaintiff meets this pleading burden, he may, if necessary, attain limited discovery to resolve any factual disputes over jurisdiction." *Id.* at 381 (citation modified).  "But if the plaintiff cannot satisfy her burden, then the substitution is taken as correct, and the suit 'is governed by the Federal Tort Claims Act.'" *Broullire v. United States*, No. 25-cv-1403, 2026 WL 555037, at *2 (D.D.C. Feb. 27, 2026) (quoting *Ballenger*, 444 F.3d at 662).

Here, the United States has certified that Federal Defendants Johnson, Harwell, Slaughter, Batista, Charles, and Tyrrell "were acting within the scope of their employment as an official of the United States" at the time of the incidents alleged in Plaintiffs' amended complaint and has accordingly substituted itself as the proper defendant to the extent Plaintiffs' claims against Federal Defendants can be construed as sounding in tort.  Westfall Certification at 1. Plaintiffs move to strike the Westfall Certification as to Batista and Charles and for limited discovery on scope-of-employment issues as to Johnson, Harwell, Slaughter, and Tyrrell. *See*

32

*generally* Pls.' Mot. Strike Westfall Certification; Pls.' Mot. Limited Disc.  As set forth below,

Plaintiffs' motions lack merit.[14]

### a.  Federal Defendants Batista and Charles

Plaintiffs argue that Batista and Charles were acting outside the scope of their

employment when, at Austria's request, they mailed two letters containing foreign criminal

complaint documents to Plaintiffs.  *See generally* Pls.' Mot. Strike Westfall Certification.  As

evidence of this, Plaintiffs cite various procedural "irregularities," including that Batista and

Charles "accept[ed] informal, private approaches from [the] Austrian Embassy," "bypass[ed]

statutory and treaty procedures under 28 U.S.C. § 1782 and 18 U.S.C. § 3512," "us[ed] an

incorrect Austrian reference number," and "sen[t] both Plaintiffs' letters and criminal subpoenas

in a single FedEx envelope."  *See id.* at 1–2 (citation modified).

The Court agrees with Federal Defendants that Plaintiffs have not plausibly pleaded

sufficient facts to rebut the United States's certification that Batista and Charles were acting

within the scope of their employment.  Federal Defendants explain that Austria requested that

DOJ's Office of International Affairs ("OIA") transmit the documents in question to Plaintiffs

pursuant to a mutual legal assistance treaty between the United States and Austria, and that

Batista and Charles did so in the performance of their duties with OIA.  *See* Fed. Defs.' Mot.

Dismiss at 13, 18.  As Federal Defendants observe, Plaintiffs' arguments focus on whether

Batista and Charles followed proper procedure in executing Austria's request, rather than

whether Batista and Charles were acting within the scope of their duties at OIA.  *See id.* at 16.

---

[14] It is unclear to the Court whether Plaintiffs seek limited discovery as to Batista and Charles as well.  To the extent they do, the Court finds, for the reasons explained below, that Plaintiffs are not entitled to limited discovery on scope-of-employment issues as to these Federal Defendants either.

But procedural irregularities—especially minor ones, like using one envelope rather than two to mail the letters—are not particularly probative on scope-of-employment issues.  And other conclusory allegations—including that Batista and Charles accepted "informal, private approaches" from Austria—are unsupported by well-pleaded facts.  Pls. Mot. Strike Westfall Certification at 2.

Furthermore, the statutes Plaintiffs cite—28 U.S.C. § 1782 and 18 U.S.C. § 3512—are inapplicable to Austria's service-of-process request.  Section 1782 applies to "a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person."  28 U.S.C. § 1782(a).  "Letters rogatory are the customary means of obtaining judicial assistance from overseas in the absence of a treaty or other agreement."  Dep't of State, *Preparation of Letters Rogatory*, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html.  But here, the United States and Austria are parties to a mutual legal assistance treaty.  Section 3512, meanwhile, permits a federal judge to issue orders to execute requests from foreign authorities "for assistance in the investigation or prosecution of criminal offenses."  18 U.S.C. § 3512(a)(1).  But § 3512 specifies that such orders may include the issuance of search warrants for physical locations and the contents of stored wire or electronic communications or records related thereto, orders for a pen register or trap and trace device, or orders requiring a person to provide testimony or produce documents; the statute does not include service of process within the scope of permitted orders.  *Id.* § 3512(a)(2).

### b.  Federal Defendants Johnson, Harwell, Slaughter, and Tyrrell

Plaintiffs urge the Court to grant limited discovery on scope-of-employment issues for Johnson, Harwell, Slaughter, whom Plaintiffs accuse of filing falsified *notes verbales* in

Plaintiffs' other cases, and Tyrrell, who is being sued for his responses to a FOIA request and submission of a declaration on behalf of the Secret Service in *Zavadovsky I*. *See generally* Pls.' Mot. Limited Disc. Nevertheless, Plaintiffs have not identified factual disputes that would warrant discovery. As Federal Defendants argue, the only conduct by these individuals that Plaintiffs allege with specificity are actions that, on their face, appear to be within the scope of their employment. *See* Fed. Defs.' Mot. Dismiss at 18–20.

With respect to the *notes verbales*, Plaintiffs argue that their "transmission" and "authentication" is in dispute, largely because DOJ "does not identify who transmitted the notes to whom, when, or under what authority, nor whether private actors . . . were in the chain." Pls.' Mot. Limited Disc. at 6–7. But the *notes verbales* have, in fact, been authenticated. As explained in Section IV.A.1, the State Department disclosed the *notes verbales* in a supplemental response to Plaintiffs' FOIA request, and Federal Defendants filed the same *notes verbales* in the relevant cases. *See* June 18, 2025 Letter. The United States has certified that Federal Defendants were acting within the scope of their employment in filing those *notes verbales*. *See* Westfall Certification. Plaintiffs, meanwhile, have not plausibly alleged *any* facts showing that the *notes verbales* were falsified, much less sufficient facts to rebut that certification.[15] Nor have

---

[15] In fact, it is apparent from the documents in the record that the Austrian Embassy transmitted the *notes verbales* to the Office of the Legal Adviser for Diplomatic Law and Litigation at the Department of State. *See generally* June 18, 2025 Letter. Plaintiff Dvoinik has submitted a declaration providing her opinion as to the "authenticity of six documents styled as Notes Verbales of the Embassy of the Republic of Austria . . . and to explain why [they] are not genuine diplomatic instruments." Pls.' Opp'n to Fed. Defs.' Mot. Dismiss Ex. Y, Dvoinik Decl. ¶ 1, ECF No. 75-2. Dvoinik challenges the authenticity of the *notes verbales* on various grounds, including on "formatting & linguistic irregularities." *Id.* ¶¶ 10–17. But Dvoinik has not shown that she has the "scientific, technical, or other specialized knowledge" necessary to offer an expert opinion on these and other issues. Fed. R. Evid. 701. As Federal Defendants argue, her declaration therefore constitutes inadmissible lay opinion under Federal Rule of Evidence 701. *See* Fed. Defs.' Reply to Pls.' Opp'n to Fed. Defs.' Mot. Dismiss ("Fed. Defs.' Reply") at 6–7, ECF No. 86.

Plaintiffs established the relevance of the authenticity of the *notes verbales* to Federal Defendants' scope of employment.  Even if the authenticity of the *notes verbales* were truly in doubt, Plaintiffs have not alleged facts suggesting that Johnson, Harwell, and Slaughter were not acting within the scope of their employment as government attorneys in filing the *notes verbales* in Plaintiffs' related cases.

Plaintiffs' request for limited discovery as to Tyrrell is also without merit.  Plaintiffs characterize Tyrrell's responses to the FOIA requests at issue in *Zavadovsky I*—seeking records regarding any Secret Service investigation into Plaintiffs—and Tyrrell's declaration in support of the government's motion for summary judgment in that case as "confidential" communications.  Am. Compl. ¶¶ 16, 241.  According to Plaintiffs, those "confidential records" were "later filed in open court . . . without Plaintiffs' consent or court authorization, constituting a violation of both the Privacy Act and agency confidentiality obligations."  *Id.* ¶ 16.  Nevertheless, as alleged in their amended complaint, Plaintiffs themselves filed one of Tyrrell's responses with the U.S. District Court for the Southern District of Florida.[16]  Am. Compl. ¶ 240.  And Plaintiffs reveal the general contents of Tyrrell's declaration in their motion for limited discovery.  *See* Pls.' Mot. Limited Disc. at 2–3.[17]  In any event, Tyrrell's responses and declaration are routine actions taken by government lawyers in FOIA lawsuits, and Plaintiffs have not plausibly pleaded sufficient facts showing otherwise.

*    *    *

---

[16] Plaintiffs also allege that Tyrrell "leaked" the FOIA responses to "foreign agents," including Attorney Defendant Dale Webner.  Am. Compl. ¶ 16.  But Plaintiffs do not plead specific facts supporting this speculative allegation.

[17] In *Zavadovsky I*, this Court had occasion to review Tyrrell's responses to Plaintiffs' FOIA requests and his declaration in support of the government's motion for summary judgment.  These documents describe in general terms the nature of responsive records withheld from Plaintiffs; they do not include the records themselves.

For the reasons above, the Court denies Plaintiffs' motion to strike the United States's Westfall Certification and motion to defer ruling on the Westfall Certification and for limited, targeted discovery.  *See* Pls.' Mot. Strike Westfall Certification; Pls.' Mot. Limited Disc. Because Plaintiffs have failed to rebut the United States's Westfall Certification, the United States is thereby substituted as the proper defendant to the extent Plaintiffs' claims against Federal Defendants can be construed as sounding in tort.  *See* Westfall Certification.  This includes, at minimum, Plaintiffs' claim for conversion against Federal Defendants.  As explained below, the Federal Tort Claims Act therefore requires that this claim be dismissed for lack of subject-matter jurisdiction.

Nevertheless, the Westfall Act excludes from its scope claims "for a violation of a statute of the United States under which such action against an individual is otherwise authorized."  28 U.S.C. § 2679(b)(2)(B).  Some courts have held that civil RICO claims fall within that exclusion. *See, e.g.*, *Wilhite v. Littlelight*, No. 21-35693, 2022 WL 3282262, at \*1 (9th Cir. Aug. 11, 2022) ("The district court correctly concluded that RICO claims against individuals constitute claims that are 'otherwise authorized' by federal statutes, and thus are excluded from the [Westfall Act] certification and substitution procedure.").  The D.C. Circuit does not appear to have addressed this question, and this Court refrains from doing so now.  Even if the United States cannot substitute itself as the proper defendant with respect to Plaintiffs' RICO claims, the Court finds, as explained below, that it lacks jurisdiction to entertain these claims for other reasons.

### 2.  Subject-Matter Jurisdiction

#### a.  *The Federal Tort Claims Act Bars Plaintiffs' Conversion Claim*

Plaintiffs' conversion claim against Federal Defendants must be dismissed for lack of subject-matter jurisdiction pursuant to the Federal Tort Claims Act ("FTCA").  "The FTCA

waives the federal government's sovereign immunity over claims for money damages that are 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Buie v. United States*, No. 22-cv-3501, 2024 WL 519593, at *3 (D.D.C. Feb. 9, 2024) (quoting 28 U.S.C. § 1346(b)(1)). The FTCA does not create a cause of action against the United States; "[i]t merely provides a method for enforcing state tort law against the federal government." *Id.* at *5. "Only the United States is a proper defendant to a claim under the FTCA." *Johnson v. United States*, 642 F. Supp. 2d 1, 3 n.3 (D.D.C. 2009); *see also* 28 U.S.C. § 2674 (providing for the United States' liability for certain tort claims). "[A] claim under the FTCA against [a federal government official] in his individual capacity must be dismissed for lack of subject matter jurisdiction." *Johnson*, 642 F. Supp. 2d at 3 n.3.

To the extent Plaintiffs mean to assert a claim for conversion only against Federal Defendants in their individual capacities, that claim must be dismissed. *See id.* Moreover, even with the United States substituted as the proper defendant, the Court lacks jurisdiction over Plaintiffs' conversion claim. "The FTCA bars a claimant from bringing suit in federal court until he has exhausted his administrative remedies." *Lineberry v. Fed. Bureau of Prisons*, 923 F. Supp. 2d 284, 291 (D.D.C. 2013) (citation omitted); *see also* 28 U.S.C. § 2675(a) (barring the institution of an FTCA claim "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency" or the agency shall have failed "to make final disposition of a claim within six months after it is filed"). Plaintiffs argue that their conversion claim is timely because they filed administrative claims with DOJ and the Secret Service in September 2025. *See* Pls.' Opp'n to Fed. Defs.' Mot.

Dismiss at 1–2, ECF No. 75.  But Plaintiffs filed suit in this Court several months beforehand, in March 2025.  *See* Compl., ECF No. 1.  Because Plaintiffs failed to exhaust administrative remedies before filing suit, the Court must therefore dismiss any conversion claim asserted against the United States.[18]  *See Henderson v. Ratner*, No. 10-5035, 2010 WL 2574175, at *1 (D.C. Cir. June 7, 2010) (affirming dismissal of an FTCA claim where "[a]ppellant failed to demonstrate that he exhausted his administrative remedies before filing suit in the district court").

### b.  *Plaintiffs' RICO and RICO Conspiracy Claims Are Patently Insubstantial*

Plaintiffs' RICO and RICO conspiracy claims must also be dismissed for lack of subject-matter jurisdiction because they are "patently insubstantial."  *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009).  "A complaint may be dismissed on jurisdictional grounds when it is patently insubstantial, presenting no federal question suitable for decision."  *Id.* (citation modified).  This standard "demands that the claims be flimsier than 'doubtful or questionable'— they must be 'essentially fictitious.'"  *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974)).  Courts in this District routinely dismiss suits alleging bizarre government conspiracies as patently insubstantial.  *See, e.g.*, *Tooley*, 586 F.3d at 1009 (dismissing a complaint that alleged "the government launched a massive surveillance program" including "wiretaps," "tracking devices," and "an officer [being] stationed outside [the plaintiff's] house"); *Bickford v. United States*, 808 F. Supp. 2d 175, 180 (D.D.C. 2011)

---

[18] The remedy provided against the United States by the FTCA is "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim."  28 U.S.C § 2679(b)(1).  Therefore, the Court dismisses Plaintiffs' conversion claim against Federal Defendants in their individual capacities with prejudice.  However, the dismissal of the same claim against the United States (to the extent one is asserted) for failure to exhaust administrative remedies is without prejudice.

(dismissing a complaint that claimed "federal officials conspired and engaged in systematic torture, harassment, and surveillance" (citation modified)); *Masek v. United States*, No. 22-cv-3574, 2024 WL 1240093, at *1 (D.D.C. Mar. 22, 2024) (dismissing a complaint alleging a "pattern of conspiracy and misconduct by federal and state government officials," including that "federal government officials conspired to interfere with [the plaintiff's] litigation").

At minimum, Plaintiffs' RICO and RICO conspiracy claims against Federal Defendants are so "wholly insubstantial" and "obviously frivolous," *see Hagans*, 415 U.S. at 536–37 (citation omitted), as to deprive this Court of subject-matter jurisdiction over those claims.[19] Like in *Masek*, Plaintiffs here allege a far-reaching criminal enterprise between Austrian and U.S. government officials to "[s]uppress Plaintiffs' civil litigation through obstruction, defamation, and procedural fraud." Am. Compl. ¶ 302. Plaintiffs' RICO claims, based on this conspiracy theory, are "essentially fictitious." *Baszak v. FBI*, 816 F. Supp. 2d 66, 69 (D.D.C. 2011) (quoting *Best*, 39 F.3d at 330). Plaintiffs argue that to label their claims patently insubstantial "ignores the reality that Plaintiffs suffered over $6,000,000 in theft and extortion" and that "Austrian authorities closed all proceedings without accountability or remedies." Pls.' Opp'n to Fed. Defs.' Mot. Dismiss at 4–5. But according to Plaintiffs, it was Austrian ministries and agents, not Federal Defendants, who "unlawfully seized" this property in Austria and "obstructed access to proceedings or remedies." Am. Compl. ¶¶ 400–02. Their claims against

---

[19] Plaintiffs also tie their conversion claim against Federal Defendants—that DOJ attorneys and staff unlawfully accessed privileged discovery materials and Plaintiffs' personal litigation records—to the alleged criminal RICO enterprise. *See, e.g.*, Am. Compl. ¶ 303. The Court could therefore also dismiss Plaintiffs' conversion claim on the grounds that it is "patently insubstantial." *Tooley*, 586 F.3d at 1009 (quoting *Best*, 39 F.3d at 330). In any event, to the extent that Plaintiffs assert a conversion claim against Federal Defendants unconnected to that enterprise, *see* Am. Compl. ¶¶ 405, 408, the Court has already found that the FTCA bars such claim. *See supra* Section IV.B.2.a.

Federal Defendants are focused on acts taken in the United States, including "responding to a FOIA request, making filings in a judicial proceeding, and transmitting documents at the request of a foreign government pursuant to mutual legal assistance treaty obligations." Fed. Defs.' Mot. Dismiss at 12. The Court agrees with Federal Defendants that Plaintiffs' attempt to weave these acts into a broader criminal RICO enterprise is founded on "extreme and implausible conspiratorial assertions." *Id.*

### c. Plaintiffs Lack Standing to Assert Any of Their Claims

As an alternative, independent basis for dismissal, Plaintiffs lack standing to assert any of their claims against Federal Defendants. "One component of the Court's Article III subject matter jurisdiction is standing to sue." *Arabzada*, 725 F. Supp. 3d at 9. "The plaintiff must demonstrate standing for each claim . . . and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 434 (2017) (citation modified). To establish standing, the plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* (citation modified).

As Federal Defendants argue, Plaintiffs' alleged injuries are not traceable to Federal Defendants' challenged conduct. Plaintiffs claim to have suffered "reputational harm, wrongful dismissal of claims, litigation disadvantage, and monetary loss" as a result of Federal Defendants' actions. *See, e.g.*, Am. Compl. ¶ 348. To the extent that "monetary loss" refers to Austrian officials' seizure of Plaintiffs' property in 2021, this injury is wholly unconnected to Federal Defendants' actions. Furthermore, Plaintiffs have not alleged facts showing how Federal

41

Defendants' court filings and transmission of documents on behalf of Austria directly caused Plaintiffs "reputational harm," "wrongful dismissal of claims," and "litigation disadvantage." *See Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991) ("[A]n injury will not be 'fairly traceable' to the defendant's challenged conduct nor 'redressable' where the injury depends not only on that conduct, but on independent intervening or additional causal factors."). To date, Plaintiffs have lost each case they have brought, many of which have already been affirmed on appeal despite Plaintiffs raising many of the same claims they raise in this case. And Plaintiffs' allegations that Federal Defendants accessed their "confidential discovery materials" or had "ex parte communications" with other litigants,[20] *see* Am. Compl. ¶¶ 11–13, are also unconnected to such harms, *see Spokeo*, 578 U.S. at 341 (observing that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement").

### 3. Personal Jurisdiction

Plaintiffs' claims against Federal Defendant Harwell are also subject to dismissal for lack of personal jurisdiction. A District of Columbia court has personal jurisdiction over a defendant "domiciled in, . . . or maintaining his . . . principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. "If the plaintiff does not allege that the defendant is domiciled in or maintains his principal place of business in the District of Columbia, a court employs a two-part test to determine whether it has personal jurisdiction." *Walsh*, 900 F. Supp. 2d at 56. First, "the District of Columbia's long-arm statute must reach the defendant." *Id.* That statute allows a District of Columbia court to exercise personal jurisdiction over a

---

[20] It is unclear to this Court why a communication with a co-defendant would constitute an "ex parte" communication.

defendant based on conduct with a connection to the District of Columbia, including when a claim arises from tortious injuries in the District of Columbia caused by acts or omissions in or outside the District of Columbia. *See generally* D.C. Code § 13-423. Second, "the exercise of personal jurisdiction must be consistent with the requirements of due process," including that the plaintiff "show that the defendant has sufficient 'minimum contacts' with the District of Columbia such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walsh*, 900 F. Supp. 2d at 56 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Plaintiffs have failed to "plead specific facts providing a basis for personal jurisdiction" over Federal Defendant Harwell. *Id.* As alleged in Plaintiffs' amended complaint, Harwell works for DOJ in the Middle District of Florida and did so at the time of his alleged conduct: filing a *note verbale* in a court in Florida without confirming its authenticity with the Department of State. *See* Am. Compl. ¶¶ 11–12. Because Plaintiffs do not plead that Harwell works or is domiciled in the District of Columbia, and because Plaintiffs claim that Harwell's acts or omissions caused them injuries in their *Fla. State Case*—decided in Hillsborough County, Florida, rather than the District of Columbia—Plaintiffs have not shown that this Court can assert personal jurisdiction over Harwell.[21]

*   *   *

---

[21] As with other Federal Defendants, the Court dismisses all claims against Federal Defendant Harwell with prejudice. As noted above, the FTC's exclusive remedy against the United States bars any subsequent conversion claim against Federal Defendants, including Harwell. *See supra* note 18. And the Court has dismissed Plaintiffs' RICO claims against Federal Defendants as patently insubstantial. Any further RICO claim based on the same alleged conspiracy against Federal Defendants, including Harwell, would fail for lack of subject-matter jurisdiction.

In sum, this Court lacks subject-matter jurisdiction over Plaintiffs' claims against Federal Defendants and personal jurisdiction over Federal Defendant Harwell.  Accordingly, the Court dismisses Plaintiffs' claims against the individual Federal Defendants with prejudice.

### C. Austrian Defendants' Motion to Quash Service of Process and Set Aside Entries of Default Against Them

The Court next addresses Austrian Defendants' motion to quash Plaintiffs' service of process on them pursuant to Federal Rule of Civil Procedure 12(b)(5) and to set aside the Clerk of Court's entries of default against them pursuant to Federal Rule of Civil Procedure 55(c).  *See generally* Austrian Defs.' Mot.  Plaintiffs attempted to serve process on Austrian Defendants by mailing the summons, complaint, and translation to the Austrian Ministry of Foreign Affairs, and then requesting that the Clerk of Court do so.  *See* Pls.' Notice Serv. on Austrian Defs., ECF No. 7; Entry of Default ("First Entry of Default"), ECF No. 29; Certificate of Clerk, ECF No. 35; Entry of Default ("Second Entry of Default"), ECF No. 67.  Austrian Defendants did not appear in the action after either attempt.  Upon Plaintiffs' motions, the Clerk thus entered two defaults against Austrian Defendants.  *See* First Entry of Default; Second Entry of Default.

After the Clerk entered the first default against Austria and completed Plaintiffs' subsequent request to mail their service packet to the Austrian Ministry of Foreign Affairs, the United States filed a notice on this Court's docket transmitting a *note verbale* from the Embassy of the Republic of Austria objecting to Plaintiffs' method of service of process.  *See* Notice Regarding Serv. on Austria, ECF No. 47.  Plaintiffs swiftly moved to strike that notice, arguing, among other things, that the *note verbale* had not been authenticated. *See* Pls.' Mot. Strike Notice Regarding Serv. on Austria ("Pls.' Mot. Strike *Note Verbale*"), ECF No. 49.

For the reasons below, the Court holds that such service was insufficient, and therefore grants Austrian Defendants' motion to quash service of process and set aside the entries of default against them.  The Court also denies Plaintiffs' motion to strike the United States's notice regarding service on Austria.[22]

### 1.  Service of Process

A federal court may assert personal jurisdiction over a defendant only if "the procedural requirements of effective service of process are satisfied."  *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (citation modified).  Service of process "notif[ies] a defendant of the commencement of an action against him" and "marks the court's assertion of jurisdiction over the lawsuit."  *Id.* at 372 (quoting *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992)).  Under Federal Rule of Civil Procedure 12(b)(5), a party can move to quash service of process on the grounds that service was "insufficient."  A motion under Rule 12(b)(5) is the "proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."  *Smith v. Overseas Korean Cultural Heritage Found.*, 279 F. Supp. 3d 293, 296 (D.D.C. 2018).  The plaintiff has the burden of establishing proper service of process.  *See Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987).

Austrian Defendants challenge Plaintiffs' attempted service as insufficient under the Federal Sovereign Immunities Act's ("FSIA") provisions governing service on foreign entities.  Relevant here, 28 U.S.C. § 1608(a) sets forth the "exclusive procedures" for effecting service on a foreign state or its political subdivisions.  *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994) (citation omitted).  Plaintiffs concede that service on Austrian

---

[22] For reasons explained above, in Sections IV.A.1 and IV.B.1.b, the Court rejects Plaintiffs' contention that the *note verbale* has not been authenticated.  Accordingly, the Court denies Plaintiffs' motion to strike the United States's notice regarding service on Austria.

Defendants—the Republic of Austria and various Austrian ministries—is governed by § 1608(a). *See* Pls' Opp'n to Austrian Defs.' Mot. at 2, ECF No. 80.

Section 1608(a) establishes, in descending order of preference, four methods of serving foreign states or their political subdivisions. 28 U.S.C. § 1608(a). The first is delivery of the summons and complaint "in accordance with any special arrangement for service between the foreign state or political subdivision." *Id.* § 1608(a)(1). "[I]f no special arrangement exists," service may be made by delivery of the summons and complaint "in accordance with an applicable international convention on service of judicial documents." *Id.* § 1608(a)(2). If service is not possible under the first two methods, the plaintiff may proceed under the third, which calls for "sending a copy of the summons and complaint and a notice of suit . . . by any form of mail requiring a signed receipt . . . to the head of the ministry of foreign affairs of the foreign state concerned." *Id.* § 1608(a)(3). Finally, if service cannot be made within 30 days under the third method, it may be effected by the clerk of the court dispatching the service packet to the Secretary of State in Washington, D.C. for transmittal "through diplomatic channels to the foreign state." *Id.* § 1608(a)(4).

Here, no special arrangement for service of process appears to exist between the United States and Austria, *see, e.g.*, Notice Regarding Serv. on Austria at 1–2; Austrian Defs.' Mot. at 8, but the United States and Austria are parties to an international convention on service of judicial documents, *see* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Convention" or "Hague Service Convention"), Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.[23] Nevertheless, Austria has issued a

---

[23] In the Court's prior opinion in *Zavadovsky I*, the Court stated that Austria was not a party to the Hague Service Convention. *See* 2025 WL 2466024, at *10. In fact, Austria ratified the Convention on July 14, 2020, and it entered into force later that year. *See Austria Ratifies the*

reservation under it that the Convention "shall not apply to the service of documents addressed to the Republic of Austria, including its political subdivisions, its authorities and persons acting on its behalf; such service shall be effected through diplomatic channels." *See Declaration/Reservation/Notification*, Hague Conf. on Private Int'l L. (July 14, 2020), https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1425&disp=resdn.  This reservation is listed on the State Department's Judicial Assistance Country Information webpage for Austria.  *See Service of Process*, Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Austria.html.

After filing their initial complaint in this matter, Plaintiffs attempted to serve process on Austrian Defendants under § 1608(a)(3), by mailing the summons, complaint, and translation to the Austrian Ministry of Foreign Affairs.  *See* Pls.' Notice Serv. on Austrian Defs.  The Clerk of Court later did the same at Plaintiffs' request.  *See* Certificate of Clerk.  However, in Austria's *note verbale* transmitted by the United States, Austria objected to Plaintiffs' service of process.

---

*Service Convention*, Hague Conf. on Private Int'l L. (July 15, 2020), https://www.hcch.net/en/news-archive/details/?varevent=743.  Nevertheless, Austria's ratification of the Convention does not change the Court's conclusion in *Zavadovsky I* that Zavadovsky and Dvoinik failed to effect proper service of process against the Austrian defendants in that case—officers Rabl and Hoflinger—or that dismissal of the claims against them was warranted.  Although Federal Rule of Civil Procedure 4(f)(1) allows for service against individuals in foreign countries "by any internationally agreed means of service . . . such as those authorized by the Hague Convention," Austria has issued a reservation under the Convention— as explained in the paragraph above—that the Convention does not apply to service against "persons acting on its behalf," such as Rabl and Hoflinger.  Furthermore, for reasons explained in *Zavadovsky I*, Zavadovsky's and Dvoinik's attempted service did not comply with Rules 4(f)(2) or (f)(3), which provide additional means of effecting service against individuals in foreign countries.  *See* 2025 WL 2466024, at *10.  In any event, besides ineffective service of process, the Court dismissed Zavadovsky's and Dvoinik's claims against Rabl and Hoflinger for other independently sufficient reasons, including lack of personal jurisdiction and the act of state doctrine.  *See generally Zavadovsky I*, 2025 WL 2466024.

*See Note Verbale*, Notice Regarding Serv. on Austria Ex. 1.  Austria indicated that pursuant to its reservation under the Hague Service Convention, service on Austria and its political subdivisions "shall be effected through diplomatic channels," as set forth in § 1608(a)(4), and that it will not act in this matter until it has been served through that method.  *Id.*  Austria observed that "Plaintiffs are entitled to serve Defendants via diplomatic channels."  *Id.*

The Court agrees with Austrian Defendants that Plaintiffs' service of process under § 1608(a)(3) was insufficient.  The Hague Service Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad," *see* 20 U.S.T. at 362, including in this case.  Article 10(a) of the Convention establishes that "[p]rovided the State of destination does not object," the Convention does not "interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad."  *Id.* at 363.  In *Water Splash, Inc. v. Menon*, the Supreme Court concluded that in "cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law."  581 U.S. 271, 284 (2017).  Austria, however, has formally objected to service under Article 10.  *See Declaration/Reservation/Notification*.  Therefore, service by mail, including pursuant to § 1608(a)(3), is categorically impermissible in Austria.  *See, e.g.*, *Azadeh v. Gov't of the Islamic Republic of Iran*, 318 F. Supp. 3d 90, 99 (D.D.C. 2018) (observing that "the method of service proscribed in section 1608(a)(3) is categorically unavailable when attempting to serve those countries" that "specifically objected to service by mail when they acceded to the Hague Convention").

Because Austria requires that its government and political subdivisions be served through diplomatic channels, as set forth in § 1608(a)(4), Plaintiffs cannot serve Austrian Defendants

through methods authorized in other subsections of § 1608(a). *See Transaero*, 30 F.3d at 154 ("[S]trict adherence to the terms of 1608(a) is required."). Furthermore, this is not a situation in which Plaintiffs' "attempts at service came so close to strict compliance with the [FSIA] as to demonstrate a good faith effort at timely compliance." *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015). In fact, Plaintiffs were aware of Austria's objections under the Hague Service Convention and insistence on service being effected under § 1608(a)(4). In a prior case in the Middle District of Florida, Plaintiffs filed a motion to authorize an alternative method of service, observing:

> Austria has objected to service through postal channels under Article 10 of the Hague Convention, and service under Section 1608(a)(3). The United States Department of State advises that if the foreign state formally objected to service by mail, then "service under Section 1608(a)(3) should not necessarily be attempted, and the plaintiff may proceed to service under Section 1608(a)(4)."

Mot. Miscellaneous Relief at 5, *Dvoinik v. Republic of Austria*, No. 8:22-cv-1700 (M.D. Fla. Oct. 26, 2022), ECF No. 7.

## 2. Entry of Default

Under Federal Rule of Civil Procedure 55(c), a court "may set aside an entry of default for good cause." Although this "decision lies within the discretion of the trial court," courts typically consider "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980). As the D.C. Circuit has recognized, "it is in the interest of [the] United States'[s] foreign policy to encourage foreign states to appear before our courts in cases brought under the FSIA." *Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 20 (D.D.C.

49

2001) (citation omitted).  Therefore, "[d]efault judgments, while never favored in any case, are especially disfavored against foreign sovereigns." *Id.*  As set forth below, all three *Keegel* factors weigh in favor of setting aside the Clerk's entries of default against Austrian Defendants.

First, Austrian Defendants' default was not willful.  As established above, Plaintiffs failed to properly serve Austrian Defendants.  "That Defendants were not properly served all but ends the inquiry about whether default was willful because Defendants had no duty to respond to the complaint absent service."  *Gosain v. Republic of India*, No. 18-cv-2427, 2024 WL 4664265, at *3 (D.D.C. Nov. 4, 2024); *see also id.* ("[W]hen parties move to set aside a default following improper service, courts will often summarily grant that request without discussing the *Keegel* factors.").  And even if Austrian Defendants had "actual notice" of the lawsuit, as Plaintiffs contend, *see* Pls.' Opp'n to Austrian Defs.' Mot. at 7, this would not cure Plaintiffs' defective service.  As noted, § 1608(a) demands strict adherence to its terms; "[i]t is not enough for [defendants] to receive 'actual notice' of the suit." *Ibiza Bus. Ltd. v. United States*, No. 10-cv-296, 2010 WL 2788169, at *1 (D.D.C. July 8, 2010) (quoting *Transaero*, 30 F.3d at 154).

Second, Plaintiffs would not be prejudiced if the Clerk's entries of default are set aside. In weighing prejudice, the Court considers not the mere fact of delay, "but rather its accompanying dangers: loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion." *Cap. Yacht Club v. Vessel AVIVA*, 228 F.R.D. 389, 394 (D.D.C. 2005) (citation modified); *see also Keegel*, 627 F.2d at 374 (stating that the fact that "setting aside the default would delay satisfaction of plaintiffs' claim, should plaintiffs succeed at trial, is insufficient to require affirmance of the denial").  Plaintiffs have not shown that such dangers are present here.  Nor have Plaintiffs shown prejudice due to the additional costs associated with effecting service through diplomatic channels.  *See Cap. Yacht Club*, 228 F.R.D.

at 394 ("[D]elay and legal costs are part and parcel of litigation and typically do not constitute prejudice for the purposes of Rule 55(c).").

Third, Austrian Defendants have at least one meritorious defense. A defendant's allegations are considered meritorious "if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Keegel*, 627 F.2d at 374 (citation modified). Among other defenses, Austrian Defendants allege that this Court lacks subject-matter jurisdiction over Plaintiffs' claims against them under the FSIA. *See* Austrian Defs.' Mot. at 13–14. The FSIA is a "jurisdictional statute" which, through specified statutory exceptions, "eliminates foreign sovereign immunity and opens the door to subject matter jurisdiction in the federal courts." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 87 (D.C. Cir. 2002). At this stage, the Court is persuaded that Austrian Defendants' argument that no exception to the FSIA applies, *see* Austrian Defs.' Reply to Pls.' Opp'n to Austrian Defs.' Mot. at 10–14, ECF No. 82, has more than "a hint of a suggestion" of a complete defense.

Plaintiffs' remaining arguments—that counsel for Austrian Defendants has a conflict of interest because of his firm's representation of Germany and the European Union in other actions and that counsel violated FARA by failing to register as a foreign agent[24]—must be rejected. Citing *Wheat v. United States*, 486 U.S. 153, 159 (1988), Plaintiffs claim that "[a] foreign state cannot establish 'good cause' to vacate default through counsel whose authority is unverified and whose concurrent representation of adverse sovereigns creates divided loyalties." Pls.' Opp'n to Austrian Defs.' Mot. at 13. Although *Wheat* is a real case—which is more than can be said about other cases cited by Plaintiffs—it has nothing to do with Rule 55(c). The Court declines to

---

[24] Plaintiffs are again reminded that "FARA exempts from registration persons engaged in the legal representation of a disclosed principal." *Dvoinik v. Rolff*, 2024 WL 2974475, at *5.

51

expend further judicial resources addressing the merits of these remaining arguments. Even if meritorious, Plaintiffs have not established their relevance.[25]

*    *    *

For the reasons above, the Court grants Austrian Defendants' motion to quash service of process and their motion to set aside the Clerk's entries of default against them.[26] Plaintiffs will have leave to effect proper service pursuant to 28 U.S.C. § 1608(a)(4) on or before June 30, 2026.

---

[25] For the same reasons, the Court denies Plaintiffs' motion for leave to file a supplemental notice of new facts and exhibits pertaining to Austrian Defendants' counsel's alleged conflict of interest. *See* Pls.' Mot. Leave File Suppl. Notice New Facts & Exs. Relevant to Defs.' Mot. Vacate Default, ECF No. 87. The Court also denies Plaintiffs' motion for leave to file a surreply. *See* Pls.' Mot. Leave File Sur-Reply, ECF No. 83. As Austrian Defendants observe, their reply "properly remained well 'within the scope of the matters [Plaintiffs] raised in opposition,'" and thus a sur-reply is not appropriate. Austrian Defs.' Opp'n to Pls.' Mot. Leave File Sur-Reply at 2, ECF No. 84 (quoting *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 188 (D.D.C. 2012)).

[26] In addition to granting Austrian Defendants' motion to vacate the Clerk's entries of default against them, the Court denies Plaintiffs' motion for default judgment against Austrian Defendants. *See* Pls.' Mot. Default J. Against Austrian Defs., ECF No. 69. "Rule 55 of the Federal Rules of Civil Procedure sets out a two-step process for entry of a default judgment." *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 44 (D.D.C. 2018). "First, the plaintiff requests that the Clerk of the Court enter default against a party who has 'failed to plead or otherwise defend.'" *Bricklayers & Trowel Trades Int'l Pension Fund v. KAFKA Constr., Inc.*, 273 F. Supp. 3d 177, 179 (D.D.C. 2017) (quoting Fed. R. Civ. P. 55(a)). "Second, the plaintiff must move for entry of default judgment." *Id.* Here, however, the Court has now vacated the Clerk's entries of default against Austrian Defendants. And even if it had not done so, the Court cannot "satisfy itself that it has personal jurisdiction" over Austrian Defendants, as it must do before entering a default judgment. *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). As noted above, a federal court cannot assert personal jurisdiction over a defendant if, as is the case here, "the procedural requirements of effective service of process [have not been] satisfied." *Mann*, 681 F.3d at 372 (citation modified).

## V. RELIANCE ON FALSE AUTHORITIES, FILING OF RULE 11 SANCTIONS MOTIONS, AND FILING OF REPETITIVE LAWSUITS

As previewed, Plaintiffs' filings are replete with misstatements of law and citations to nonexistent cases and fake quotations. *See, e.g.*, Pls.' Opp'n to Att'y Defs.' Mot. Dismiss at 4 (citing a fake quotation from *United States v. Microsoft Corp.*, 253 F.3d 34, 46 (D.C. Cir. 2001)); *id.* at 11 (citing a fake quotation from *Apotex, Inc. v. FDA*, 393 F.3d 210 (D.C. Cir. 2004)); *id.* at 17 (citing a fake quotation from *Thomas v. Patton*, 939 So. 2d 139 (Fla. Dist. Ct. App. 2006)); *id.* (citing a case, *Young v. District of Columbia*, 752 F. Supp. 2d 1 (D.D.C. 2010), that does not exist); Pls.' Mot. Strike Response at 3 (misrepresenting the effect of Fla. R. App. P. 9.110(b)); *id.* (citing a case, *Beaucage v. Beaucage*, 583 So 2d 846 (Fla. 5th DCA 1991), that does not exist); *id.* (citing a fake quotation from *Miller v. Fortune Ins. Co.*, 484 So. 2d 1221 (Fla. 1986)); Pls.' Opp'n to Austrian Defs.' Mot. at 10–11 (misrepresenting a holding from *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990)); *id.* at 13 (misrepresenting a holding from *Wheat v. United States*, 486 U.S. 153 (1988)). Plaintiffs' citations to hallucinated authorities bear the hallmarks of reliance on an artificial intelligence ("AI") tool. *See Williams v. Cap. One Bank, N.A.*, No. 15 24-cv-2032, 2025 WL 843285, at *7 (D.D.C. Mar. 18, 2025) ("Courts have recently seen increasing reliance on artificial intelligence in legal proceedings, leading to the use of nonexistent citations in court documents.").

Plaintiffs insist that their pleadings are not AI-generated. *See* Pls.' Reply to Att'y Defs.' Opp'n to Pls.' Mot. Judicial Notice & Protective Order at 4, ECF No. 41. But to the extent Plaintiffs also dispute that their court filings are free of AI-generated content, this claim would appear doubtful. Indeed, parts of Plaintiffs' motion to strike the United States's Westfall Certification read as if an unknown intelligent being were addressing Plaintiffs directly. *See* Pls.

Mot. Strike Westfall Certification at 4 ("By noting that the subpoena and investigation notice were in foreign languages with no translation, and that Batista avoided specifying the nature of the documents while still admitting they came from a foreign court, you reinforce your point that proper judicial review would have blocked assistance."); *id.* ("That bolsters your argument she acted for foreign/third-party purposes, not within her employment scope.").

Plaintiffs are advised that it is unacceptable to submit filings to the Court—whether AI-generated or not—containing false, misleading, or nonexistent quotations or authorities.  Such conduct contravenes Plaintiffs' duty of candor to the Court.  *See United States v. Stephens*, No. 23-CIV-80043, 2025 WL 2840746, at *3 (S.D. Fla. Aug. 7, 2025) (noting that a litigant's "*pro se* status does not shield him from the same duty of candor to the court as imposed on any other litigant" (citation modified)).  In particular, Federal Rule of Civil Procedure 11(b)(2) provides that "[b]y presenting to the court a pleading, written motion, or other paper," an unrepresented party "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law . . . ."  Fed. R. Civ. P. 11(b)(2).  At minimum, Rule 11(b)(2) requires litigants to confirm the existence and validity of cases and quotations cited in their court filings.  Furthermore, as noted previously, Rule 11(b)(1) prohibits litigants from presenting motions—including motions for sanctions against other litigants or attorneys—"for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 11(b)(1).

Given Plaintiffs' apparent violations at least of Rule 11(b)(2), Plaintiffs are cautioned that further violations of Rule 11 will not be tolerated, either by this Court or any other court.  If this Court suspects in the future that Plaintiffs have violated Rule 11(b)—including by relying on

54

false authorities or filing frivolous Rule 11 sanctions motions—Plaintiffs will be ordered to show cause why such conduct does not violate Rule (11)(b) and why they ought not be sanctioned for it.  Sanctions under Rule 11 could include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).

Plaintiffs are further warned that if they attempt to reinstate claims or file new claims before this Court that are "repetitive" or constitute "frivolous and clear attempt[s] to circumvent . . . orders in other districts," *see Middleton*, 318 F. Supp. 3d at 89, Plaintiffs will be ordered to show cause why the Court should not impose pre-filing restrictions.  Such restrictions could include a prohibition on filing actions before the District Court of the District of Columbia related to this matter without pre-authorization from a judge in this District upon a finding that the case could be meritorious rather than repetitive.  *See, e.g.*, *id.*

## VI.  CONCLUSION

For the foregoing reasons, Attorney Defendants' Motion to Dismiss (ECF Nos. 9, 15, 24) is **GRANTED**; Federal Defendants' Motion to Dismiss (ECF No. 73) is **GRANTED**; Austrian Defendants' Motion to Quash Service of Process and Set Aside the Clerk's Entries of Default Against Them (ECF No. 78) is **GRANTED**; Plaintiffs' Motion for Discovery (ECF No. 2) is **DENIED**; Plaintiffs' Motion for Entry of Default Against Attorney Defendants (ECF No. 10) is **DENIED**; Plaintiffs' Motion for Sanctions Against Attorney Defendants (ECF No. 31) is **DENIED**; Plaintiffs' Motion for Judicial Notice and Protective Order (ECF No. 36) is **DENIED**; Plaintiffs' Motion to Strike Attorney Defendants' Response to Plaintiffs' Supplement to Their Motion for Sanctions (ECF No. 43) is **DENIED**; Plaintiffs' Motion to Strike the United States's

Notice Regarding Service on Austria (ECF No. 49) is **DENIED**; Plaintiffs' Motion to Strike the United States's Westfall Certification (ECF No. 50) is **DENIED**; Plaintiffs' Motion to Defer Ruling on the Westfall Certification and for Limited, Targeted Discovery (ECF No. 60) is **DENIED**; Plaintiffs' Motion to Narrow Claims as to Sovereign Defendants (ECF No. 68) is **GRANTED IN PART AND DENIED IN PART**; Plaintiffs' Motion for Entry of Default Judgment Against Austrian Defendants (ECF No. 69) is **DENIED**; Plaintiffs' Motion to File a Sur-Reply (ECF No. 83) is **DENIED**; and Plaintiffs' Motion for Leave to File Supplemental Notice of New Facts and Exhibits (ECF No. 87) is **DENIED**.  Plaintiffs' claims against Attorney Defendants and the individual Federal Defendants are dismissed with prejudice.  Furthermore, the Clerk of Court's entries of default (ECF Nos. 29, 67) are vacated, Plaintiffs' service of process against Austrian Defendants is quashed, and Plaintiffs shall have leave to effect proper service pursuant to 28 U.S.C. § 1608(a)(4) on or before June 30, 2026.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 31, 2026                                      RUDOLPH CONTRERAS
                                                           United States District Judge